Argued and submitted July 23, 1997, reversed and remanded January 7, petition for review allowed April 14, 1998 (327 Or 82)

**MELVIN R. NORRIS,**
*Petitioner,*

*v.*

**BOARD OF PAROLE
AND POST-PRISON SUPERVISION,**
*Respondent.*

(CA A85542)

952 P2d 1037

Eric M. Cumfer, Deputy Public Defender, argued the cause for petitioner. With him on the briefs was Sally L. Avera, Public Defender.

Christine A. Chute, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge,* and Haselton, Judge.

DE MUNIZ, P. J.

---

* Deits, C. J., *vice* Richardson, S. J.

## DE MUNIZ, P. J.

In this petition for judicial review, petitioner seeks reversal of an order of the Board of Parole and Post-Prison Supervision (Board) setting his parole release date for August 2018.[1] We reverse and remand.

In 1978, petitioner was convicted of two counts of aggravated murder under ORS 163.095(2)(c) (multiple victims).[2] The court imposed life sentences without possibility of parole for 20 years for each conviction, to be served consecutively.[3] Under the statutory scheme for aggravated murder,[4] the Board's only authority to alter a minimum term is under ORS 163.105(3) to (6), which express "a complete legislative policy." *Severy v. Board of Parole*, 318 Or 172, 179, 864 P2d 368 (1993).

The Board acknowledges that, even for prisoners with consecutive sentences and consecutive minimum terms, ORS 163.105 provides that, on a prisoner's petition at any time after 15 years from the date of the imposition of the minimum term, the Board must hold a hearing. *Severy*, 318 Or at

---

[1] Petitioner filed his original petition for review of a 1994 Board order. The Board then issued an order on reconsideration in 1996, and petitioner filed an amended petition for judicial review. The Board agrees that we may consider petitioner's claim, as petitioner initiated the proceedings before the amendments to ORS 144.335 took effect. *See Luckey v. Board of Parole*, 150 Or App 480, 946 P2d 361 (1997) (under amended statute, decisions relating to release dates are not subject to direct review by Court of Appeals).

[2] We refer to the statutes as they read at that date.

[3] Petitioner was also convicted of one count of attempted murder. On the aggravated murder convictions, the trial court originally sentenced petitioner to two life terms with two 30-year minimum terms without possibility of parole and, on the attempted murder conviction, it imposed a 20-year term. The sentences were to be served consecutively. On appeal, this court reversed because the trial court had failed to obtain a presentence investigation. We noted that the 30-year minimum mandatory sentences exceeded those allowed by statute. *State v. Norris*, 40 Or App 505, 507, 595 P2d 1261, *rev den* 287 Or 355 (1979). On remand, the court imposed the consecutive life sentences without possibility for parole for 20 years for each of the aggravated murder counts. The court also imposed a 20-year sentence for attempted murder, concurrent to the life sentences. Petitioner then filed a petition for post-conviction relief, arguing that the sentences violated Article I, section 15, of the Oregon Constitution. The circuit court denied relief, and this court affirmed. *Norris v. Cupp*, 67 Or App 393, 678 P2d 756, *rev den* 297 Or 824 (1984).

[4] Under the current version of ORS 163.105, a conviction for aggravated murder has a 30-year minimum term of confinement with a rehabilitation hearing after 25 years have been served.

179. The sole issue at the hearing is whether the prisoner is "likely to be rehabilitated within a reasonable period of time," and the petitioner bears the burden of proof on that issue. ORS 163.105(3). Only if the Board finds that the prisoner is capable of rehabilitation may the Board change the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. ORS 163.105(4); *Id.*

The rehabilitation hearing occurs only in the context of a conviction for aggravated murder, which always carries a minimum term of confinement. As the Board explains:

> "A person convicted of aggravated murder in 1978 received a mandatory life sentence, like anyone convicted of murder at that time. ORS 163.115(5) (1977). For those convicted of aggravated murder, the court was also required to impose a minimum sentence and 'order that the defendant shall be confined for a minimum of 20 years without possibility of parole, release on work release, temporary leave or employment at a forest or work camp.' ORS 163.105(2) (1977). Note that offenders convicted of aggravated murder were *not* sentenced to life in prison without the possibility of parole; they were sentenced to life in prison with the possibility of parole, but only after serving 20 years." (Emphasis the Board's.)

Thus, a hearing under ORS 163.105 is only about whether the minimum term of confinement should be eliminated.

Following petitioner's rehabilitation hearing here, a majority of the Board found that petitioner was capable of rehabilitation within a reasonable period of time. However, the Board "sustained the judicially imposed minimum of 20 years as to each count." Petitioner assigns error to the 40-year period of incarceration. He argues that the Board erred in holding that it had the discretion to set his minimum period of confinement between 30 and 40 years without resort to the matrix when it found that he was capable of rehabilitation.

■     Before turning to petitioner's assignment of error, which raises an issue of law, we must first address his preliminary contention that the trial court acted beyond the authority given to it by ORS 163.105(2) in imposing multiple

minimum terms of confinement. The Board argues that petitioner is collaterally attacking his sentence, which, it contends, he cannot do in this administrative proceeding. The Board argues that, because petitioner did not raise the legality of his sentence in his direct appeal, claim preclusion precludes him from now asserting it, and that post-conviction proceedings provide the exclusive method for challenging sentences.

Petitioner responds that, in the "narrow circumstances" presented here, he may collaterally attack his sentence. He argues that claim preclusion does not apply in criminal cases. *See State v. Stanford*, 111 Or App 509, 512 n 3, 828 P2d 459 (1992) (court does not decide if preclusion doctrines can be applied against a defendant in a criminal proceeding). He contends that, if the circuit court lacked authority to impose consecutive minimum terms, it acted beyond its jurisdiction, and the effect of permitting a challenge to his sentence only in post-conviction proceedings means that the Board would have to uphold a void judgment.

Petitioner cites *Sommers v. Board of Parole*, 69 Or App 8, 683 P2d 1037 (1984), for support of his proposition that, if a court orders execution of a sentence in excess of that allowed by law, the judgment may be collaterally attacked. In *Sommers*, following the petitioner's conviction of murder and sentence of life imprisonment with a minimum term of 10 years, she sought review of a Board order setting a parole release date. Her only argument was that the Board had abused its discretion. However, *sua sponte*, we noted that the Supreme Court had recently decided *State v. Macy*, 295 Or 738, 671 P2d 92 (1983), in which it held that the legislature had not provided a minimum sentence for murder. Accordingly, under *Macy*, the petitioner's 10-year minimum sentence was void, and we remanded to the Board for reconsideration of the release date without taking into account the 10-year minimum sentence.

*Sommers* does not advance petitioner's position here. We did not hold that the petitioner could litigate her sentence in the administrative proceeding, and, indeed, we noted that the petitioner's "sentence may not be modified or vacated in this proceeding[.]" 69 Or App at 9. Our remand

was based on the recognition that a point of law, which had become settled after the Board had acted, affected the Board's decision. Unlike the situation in *Macy*, petitioner here does not cite settled authority holding that the circuit court could not impose consecutive minimum terms under ORS 163.105(2).

Irrespective of whether claim preclusion applies in a criminal proceeding, we agree with the Board that petitioner cannot collaterally attack his sentence in this proceeding. On direct appeal, petitioner did not challenge the authority of the court to impose consecutive minimum terms, and a petition for post-conviction relief is the sole method for collaterally challenging the lawfulness of the sentence. ORS 138.540(1);[5] *Mora v. Maass*, 120 Or App 173, 176, 851 P2d 1154 (1993), *aff'd* 319 Or 570, 877 P2d 641 (1994).

We turn to petitioner's contention that the Board erred in "sustaining" the judicially imposed 40-year term of confinement. At issue is ORS 163.105(4), which provides:

> "If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of his confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect. Otherwise, the board shall deny the relief sought in the petition."

Petitioner argues that, under the statute, once the Board found that he was capable of rehabilitation, that finding "nullified" his minimum terms, and the Board had to apply the matrix in setting a release date.

The Board characterizes the language of ORS 163.105(4) as, "at least initially, a bit confusing." It argues, however, that the correct interpretation of ORS 163.105(4) requires the Board to make two findings after a rehabilitation hearing: It must find that the prisoner is capable of rehabilitation *and* that the prisoner's sentence "should be

---

[5] ORS 138.540(1) provides, in part:

"Except as otherwise provided in [the Post-Conviction Hearing Act], a petition [for post-conviction relief] shall be the exclusive means, after judgment rendered upon a conviction for a crime, for challenging the lawfulness of such judgment or the proceedings upon which it is based."

changed." It argues that, if the second finding is not made, the matrix does not apply and that here the Board did not find that petitioner's terms of confinement should be changed.

■ Petitioner counters that we should not address the Board's argument, which was not made to the Board. Indeed, the "confusing" wording of ORS 163.105(4) has been further obfuscated by the Board's shifting interpretations of it. The Board originally concluded that it had to set petitioner's confinement at a minimum of 40 years regardless of any findings it made. Accordingly, it issued an order finding that petitioner could be rehabilitated within a reasonable period of time but set a release date after the 40-year term. Then apparently deciding that, in fact, it did not have to apply the judicial minimum, the Board withdrew its order. When petitioner appeared before the Board at the hearing on reconsideration, the Board took the position that it considered petitioner to be a parolable life-sentenced inmate but that it was not required to put petitioner in the matrix. Although petitioner has been placed at a disadvantage by the Board's shifting positions, nonetheless, the Board has no authority to alter a minimum term unless provided for in ORS 163.105. *Severy*, 318 Or at 179. The correct interpretation of the statute has always been central to this case, and petitioner has answered the Board's new argument in a responding brief, filed with leave of the court. Accordingly, under these circumstances, we address the Board's argument.

■ The Board argues that ORS 163.105(4) authorizes it to allow for the possibility of parole before the end of the minimum sentence but does not compel a change in the terms of confinement. That interpretation is supported by the use of the conjunctive "and" in ORS 163.105(4): The Board shall enter an order changing the terms of confinement "[i]f * * * the board finds that the prisoner is capable of rehabilitation *and* that the terms of his confinement should be changed[.]" (Emphasis supplied.) Petitioner argues, however, that the first level of statutory analysis involves consideration of the text in context and that, in context, the Board's construction of ORS 163.105(4) is not reasonable.

Petitioner points to the "express language" of ORS 163.105(3), which limits the hearing to "[t]he sole issue" of rehabilitation. He argues that construing ORS 163.105(4) to allow the Board to keep petitioner incarcerated based on any factor it pleases is contrary to that legislative limitation and concludes:

> "The plain words of [ORS 163.105(4)], in context, direct the Board [to] make one finding: on rehabilitation. The remaining language in subsection (4) tells the Board what it must do once the finding is made: change 'the terms of his confinement' to 'life imprisonment with the possibility of parole.' "

However, the context also includes subsection (5), which provides:

> "Not less than two years after the denial of the relief sought in a petition under this section, the prisoner may petition again for a change in the terms of his confinement. Further petitions for a change may be filed at intervals of not less than two years thereafter."

The text of that subsection may be read to support either the Board's or petitioner's argument. Subsection (5) appears to address two separate findings from the hearing by allowing a prisoner to petition again "for a change in the terms of his confinement." However, "the denial of the relief" is the relief "sought in a petition under this section," and the petition is to be "under this section[.]" The only petition authorized under ORS 163.105 is limited to rehabilitation. Thus, subsection (5) also supports the conclusion that a finding of rehabilitation incorporates a change in terms of confinement, as petitioner urges.

■ Accordingly, because the issue is not entirely clear from the text and context, we turn to the legislative history. We have not located, and neither party has cited, testimony directly relating to what findings were to be made after the rehabilitation hearing. We conclude, however, that the legislative history is not supportive of the assertion that the legislature intended to authorize the Board to deny a change in the terms of confinement when there is a finding of a likelihood of rehabilitation.

House Bill 2011 (1977), which became ORS 163.105, was a compromise between the House, which wanted life without parole for certain offenses, and the Senate, which expressed concerns that a person sentenced to life without parole would have no incentive to behave in prison.[6] Representative Myers moved for the adoption of the conference committee's bill on the House floor, explaining that, under the compromise, the Board had the authority "to, in effect, remove the person from the minimum sentencing structure at specified time intervals." The scheme was one of stiff minimum sanctions with some flexibility. Representative Lombard, who had been a member of the House Judiciary Committee that considered the bill and the conference committee that drafted the compromise, explained that the bill set interim time periods to allow the parole board to review how an individual was doing and that the burden on a prisoner to show a likelihood of rehabilitation was a heavy burden. In asking House members to pass the measure, Representative Lombard urged members to consider the measure "practically speaking" in the light of the length of time that a prisoner would have to serve before the rehabilitation hearing: The prisoner was going to be "salted away" for a long period of time and the element of hope would be "way down the road."[7]

Here, the Board acknowledges that the legislative history shows that the legislature "wanted to impose a severe penalty on those convicted of aggravated murder, yet did not want to eliminate all hope for eventual release." It would be contrary to the legislature's intent to provide a chance for relief from incarceration to read ORS 163.105(4) as giving the Board unfettered discretion to deny a change in confinement, even if the petitioner has, in prison, conducted himself or herself so as to be able to prove a likelihood of rehabilitation. Accordingly, we hold that there is no "rehabilitation," as that term is meant in ORS 163.105, if the prisoner has not proved that the terms of confinement should be changed.

---

[6] Minutes, Senate Judiciary Committee, June 2, 1977.

[7] Tape recording, Proceedings of the House of Representatives, June 29, 1977, Tape 36, Side 1.

Indeed, at the hearing on the order that led to this judicial review, the Board itself appears to have interpreted a finding of rehabilitation as changing the terms of confinement to life with a possibility of parole. The Board explained in its administrative review response:

"The Board treated this inmate the same as any inmate with a parolable life sentence. There is no logical or legal justification for a prison term hearing in this situation to be procedurally different from any other prison term hearing. The finding that he is capable of rehabilitation only allows for a sentence of life without the possibility of parole to be converted to a life sentence with the possibility of parole. It does not mandate parole.

"Some inmates with parolable life sentences serve the imposed minimum sentence; some serve a matrix set which may be more or less than the minimum sentences and some serve life. This inmate has achieved a possibility of parole, not a guarantee. Capable of rehabilitation does not mean he is rehabilitated, nor does it guarantee he ever will be rehabilitated. The finding is only that he appears to be capable of rehabilitation."

The Board's order found a matrix range of 240 to 336 months and aggravating factors; it refused to "unsum" defendant's consecutive sentences and rejected petitioner's mitigating circumstances. However, the order also "sustained the judicially imposed minimum of 20 years as to each count[.]"

Petitioner is correct that the Board did not have the discretion to sustain the minimum. The Board has not understood a finding of rehabilitation to include a possible change in confinement. Instead, the Board's order is based on its position that it had the authority to continue the minimum term, irrespective of any finding of the likelihood of rehabilitation.[8] Because we hold that to make a finding of rehabilitation, the Board must find that the terms of confinement should be changed, and because petitioner bears the burden of proving that the minimum term should be changed, the

---

[8] ORS 144.110, which allows a court to impose a minimum term that cannot be set aside "except upon affirmative vote of a majority of the members of the [parole] board," does not apply by its terms to those sentenced to life. *See State v. Macy*, 295 Or 738, 741, 671 P2d 92 (1983).

order must be reversed and remanded to the Board for further proceedings.

Because of our holding, we do not address petitioner's remaining assignments of error relating to the Board's findings on aggravating and mitigating factors.

Reversed and remanded for further proceedings.