Argued and submitted February 25, 1999, decision of the Court of Appeals affirmed; order of the Board of Parole and Post-Prison Supervision reversed, and case remanded to the Board for further proceedings October 26, 2000, petition for reconsideration denied July 24, 2001

## MELVIN R. NORRIS,
*Petitioner on Review,*

*v.*

## BOARD OF PAROLE AND POST-PRISON SUPERVISION,
*Respondent on Review.*

### (CA A85542; SC S45047)

13 P3d 104

Eric M. Cumfer, Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Sally L. Avera, Public Defender, and Andy Simrin, Deputy Public Defender.

Christine Ann Chute, Assistant Attorney General, Salem, argued the cause for respondent on review. Douglas F. Zier, Assistant Attorney General, Salem, filed the briefs. With him on the briefs were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Judy C. Lucas, Assistant Attorney General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

** Kulongoski, J., did not participate in the consideration or decision of this case.

RIGGS, J.

## RIGGS, J.

The issue in this case is whether, under the law in effect in 1978, the Board of Parole and Post-Prison Supervision (Board) had the authority to sustain petitioner's minimum terms of confinement after an affirmative finding that petitioner was likely to be rehabilitated within a reasonable period of time. The Court of Appeals reversed the Board's decision to sustain the minimum terms and remanded for further proceedings. *Norris v. Board of Parole*, 152 Or App 57, 67, 952 P2d 1037 (1998). For reasons different from the Court of Appeals', we affirm the decision of that court and remand the case to the Board for further proceedings.

In 1979, a jury convicted petitioner of two counts of aggravated murder, ORS 163.095(2)(c) (1977) (multiple victims), and one count of attempted murder, ORS 163.115 (1977).[1] The convictions arose out of crimes that petitioner committed in 1978. The trial court imposed two sentences of life without possibility of parole for 20 years for the two aggravated-murder counts, the second sentence to be served consecutively to the first. For the attempted-murder count, the court imposed one 20-year sentence, to be served concurrently with the two life sentences.

On September 10, 1993, after having served 15 years, petitioner petitioned the Board for a "rehabilitation hearing" under ORS 163.105 (1977) (set out below). That statute provides, in part, that, for a person convicted of aggravated murder under ORS 163.095(2) (1977), the court must impose a minimum sentence of 20 years without possibility of parole. ORS 163.105 (1977) also provides that, after

---

[1] ORS 163.095(2)(c) (1977) defines "aggravated murder," in part, as murder where "[t]here was more than one murder victim."

ORS 163.115 (1977) provides, in part:

"(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance[.]"

ORS 161.405(1) (1977) provides:

"A person is guilty of an attempt to commit a crime when he intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

15 years of that 20-year minimum term, such a prisoner is entitled to a rehabilitation hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. If the Board finds that the prisoner is capable of rehabilitation and that the terms of confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect. As a result of such a hearing in this case, on January 26, 1994, the Board issued Board Action Form (BAF) 4,[2] in which two of the three panel members found that petitioner could be rehabilitated within a reasonable period of time.[3] Those two members would have set a firm parole release date of July 11, 2018, following approximately 40 years of incarceration. The Board concluded, however, that it needed a unanimous vote on the issue of rehabilitation and, thus, declined to set a parole release date. On administrative review, the Board decided

---

[2] A Board Action Form is an order of the Board.

[3] OAR 255-32-020 (1993) (renumbered as OAR 255-032-0020) set out the following criteria for determining "whether the inmate is likely to be rehabilitated prior to release":

"(1) The inmate's involvement in correctional treatment, medical care, educational, vocational or other training in the institution will substantially enhance their [sic] capacity to lead a law-abiding life when released;

"(2) The inmate's institutional employment history;

"(3) The inmate's institutional disciplinary conduct;

"(4) The inmate's maturity, stability, demonstrated responsibility, and any apparent development in the inmate's personality which may promote or hinder conformity to law;

"(5) The inmate's past use of narcotics or other dangerous drugs, or past habitual and excessive use of alcoholic liquor;

"(6) The inmate's prior criminal history, including the nature and circumstances of previous offenses;

"(7) The inmate's conduct during any previous period of probation or parole;

"(8) The inmate does not have a mental or emotional disturbance, deficiency, condition or disorder predisposing them [sic] to the commission of a crime to a degree rendering them [sic] a danger to the health and safety of the community;

"(9) The adequacy of the inmate's parole plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood or community in which the inmate plans to live;

"(10) There is a reasonable probability that the inmate will remain in the community without violating the law, and there is substantial likelihood that the inmate will conform to the conditions of parole."

that it needed only a majority vote, not a unanimous vote. Accordingly, the Board firmly set petitioner's parole release date for July 11, 2018.

On September 8, 1994, petitioner petitioned for judicial review in the Court of Appeals.[4] After petitioner filed his brief in the Court of Appeals, the Board withdrew its order for reconsideration. *See* ORS 183.482(6) (1993) (permitting agencies to withdraw and reconsider administrative orders).

After two more hearings and several other BAFs, the Board issued BAF 9. In BAF 9, the Board first noted that it had not reconsidered its previous decision that petitioner was capable of rehabilitation within a reasonable period of time. The Board then applied the current sentencing matrix to petitioner, finding that he had a matrix range of 240 to 336 months, or 20 to 28 years.[5] The Board also made findings on several aggravation and mitigation factors. Specifically, the Board found two aggravation factors: (1) that petitioner, through use of words, conduct, and a weapon, threatened death or physical injury toward witnesses; and (2) that the degree of injury was substantially greater than characteristic for the crime, in that the crime occurred in the presence of children and resulted in the deaths of two husbands/fathers. In mitigation, the Board found that petitioner had educated himself while in prison (petitioner received a bachelor of science degree from Western Oregon State College), had demonstrated a good work ethic, and had adjusted to prison life.

---

[4] The Court of Appeals had jurisdiction to consider petitioner's claim, because he initiated the proceedings before the 1995 amendments to ORS 144.335 (1993) took effect. *See* Or Laws 1995, ch 108, § 3 (effective September 9, 1995) (setting out 1995 amendments). ORS 144.335(3) (1995), which the legislature since has not amended in relevant part, bars judicial review of any Board decision relating to a parole release date. *Quintero v. Board of Parole*, 329 Or 319, 321, 986 P2d 575 (1999).

[5] Under the sentencing matrix system that was in effect at the time petitioner committed his crimes, the Board determined the duration of a prisoner's imprisonment by choosing a term of imprisonment from a "range" established for the offense by administrative rule, subject to variations for aggravating and mitigating circumstances. ORS 144.120 (1977); ORS 144.780 (1977); ORS 144.785 (1977); *Severy v. Board of Parole*, 318 Or 172, 176, 864 P2d 364 (1993). Because petitioner elected to have the current matrix apply to his case, the Board assigned a score of 10 for his criminal history/risk and a score of eight for his crime severity category. With those scores, his matrix range is 120 to 168 months per conviction of aggravated murder, making his summed range 240 to 336 months.

Because the matrix range was less than petitioner's judicially ordered minimum terms of 40 years, the Board then considered whether it should alter his minimum terms of confinement:

> "The Board unanimously sustained the judicially imposed minimum of 20 years as to each count, finding the term is an appropriate sanction for the criminal conduct and necessary for the protection of the public. In reaching this decision the Board considered and rejected a lesser minimum between 15-20 years as to each count."

Finally, the Board established petitioner's projected parole release date as August 5, 2018.

Petitioner sought administrative review of BAF 9. On June 24, 1996, the Board issued an administrative review response, in which the Board adhered to BAF 9. The Board explained:

> "The Board treated this inmate the same as any inmate with a parolable life sentence. * * * The finding that he is capable of rehabilitation only allows for a sentence of life without the possibility of parole to be converted to a life sentence with the possibility of parole. It does not mandate parole. * * *

> "This inmate has achieved a possibility of parole, not a guarantee. * * *"

Petitioner filed an amended petition for judicial review in the Court of Appeals. In his brief, he made two arguments in support of his contention that the Board erred by sustaining the 40-year period of incarceration. First, he claimed that the Board's order was based on an invalid sentence. Specifically, he argued that the trial court had no authority to impose consecutive minimum terms of confinement. Second, he argued that, because the Board found that he was capable of rehabilitation, his minimum terms were "nullified," and the Board had to apply the matrix system in setting a release date. In additional assignments of error, petitioner sought reversal of one of the Board's findings in aggravation and its failure to find additional mitigation.

In response, the Board first argued that petitioner could not attack collaterally his original sentence. Second,

the Board interpreted ORS 163.105(4) (1977) to require *two* findings before the Board could alter any minimum term: (1) that petitioner was capable of rehabilitation *and* (2) that the terms of confinement should be changed to life with the possibility of parole. The Board argued that it had made the first, but not the second, of those required two findings. The Board concluded that its findings of aggravation and mitigation were surplusage, and that it had no authority to alter the 20-year minimum terms.

In its opinion, the Court of Appeals first held that petitioner could not attack collaterally his original sentence in this proceeding. *Norris*, 152 Or App at 62. The court then turned to whether the Board had erred in sustaining petitioner's minimum terms. After examining the text, context, and legislative history of ORS 163.105(4) (1977), the court concluded that proving that a prisoner is "capable of rehabilitation" under ORS 163.105 (1977) includes proving that the terms of confinement should be changed: "[T]here is no 'rehabilitation,' as that term is meant in ORS 163.105 [(1977)], if the prisoner has not proved that the terms of confinement should be changed." *Id.* at 65. The Court of Appeals remanded for the Board to conduct a hearing in light of the court's interpretation of "rehabilitation." We allowed petitioner's petition for review.

We review the Board's order under ORS 183.482-(8)(b) (1993). *See Calderon-Pacheco v. Board of Parole*, 309 Or 454, 457, 788 P2d 1001 (1990) (so stating). That statute provides, in part:

"(b)   The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A)   Outside the range of discretion delegated to the agency by law; [or]

"* * * * *

"(C)   Otherwise in violation of a constitutional or statutory provision."

We first consider petitioner's argument that the Board improperly relied on an invalid sentence when establishing his parole release date. Petitioner argues that his original sentence is void because ORS 163.105(2) (1977)

authorizes a trial court to impose one, and only one, minimum term of confinement. Petitioner contends that that is so regardless of the number of counts of aggravated murder for which a person has been convicted. Anticipating the Board's characterization of his argument as an improper collateral attack, petitioner argues that, as provided in ORS 144.335 (1993), he may challenge any board order that relates to parole dates. Alternatively, he argues that, because the sentencing court had no jurisdiction to impose consecutive minimum terms, this court may consider his present challenge.

■    We agree with the Court of Appeals and the Board that petitioner's argument is a collateral attack on his original sentence, which is not cognizable in this administrative proceeding. *See Palmer v. State of Oregon*, 318 Or 352, 362, 867 P2d 1368 (1994) (holding that, generally, petitioner must raise issue at criminal trial or on direct appeal to obtain post-conviction relief on that ground). Consequently, we will not consider petitioner's argument that the trial court improperly imposed consecutive minimum terms.

We turn to the issues that are at the heart of this case, the resolution of which depends on the proper interpretation of ORS 163.105 (1977). That statute provides:

"Notwithstanding the provisions of ORS chapter 144, ORS 421.165 and 421.450 to 421.490:

"(1)    When a defendant is convicted of murder defined as aggravated murder pursuant to subsection (1) of ORS 163.095, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release, temporary leave or employment at a forest or work camp.

"(2)    When a defendant is convicted of murder defined as aggravated murder pursuant to subsection (2) of ORS 163.095, the court shall order that the defendant shall be confined for a minimum of 20 years without possibility of parole, release on work release, temporary leave or employment at a forest or work camp.

"(3)    At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, or at any time after 15 years from the date of imposition of a minimum period of confinement

pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. The proceeding shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.500 except that:

"(a)   The prisoner shall have the burden of proving by a preponderance of the evidence that he is likely to be rehabilitated within a reasonable period of time; and

"(b)   The prisoner shall have the right, if he is without sufficient funds to employ an attorney, to be represented by legal counsel, appointed by the board, at state expense.

"(4)   If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of his confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect. Otherwise the board shall deny the relief sought in the petition.

"(5)   Not less than two years after the denial of the relief sought in a petition under this section, the prisoner may petition again for a change in the terms of his confinement. Further petitions for a change may be filed at intervals of not less than two years thereafter."

Petitioner argues that the only issue at a rehabilitation hearing under ORS 163.105(4) (1977) is whether the prisoner is capable of rehabilitation. He contends that the statutory phrase "and that the terms of * * * confinement should be changed" does not refer to a separate finding, but merely describes the relief to be given when the Board makes such a finding. Petitioner further argues that, in light of the Board's finding that he is capable of rehabilitation, the Board must convert the terms of his confinement to a parolable life sentence and set terms according to the matrix.

As noted, the Board, for its part, argues that, under ORS 163.105(4) (1977), it must make *two* independent and co-equal findings before it may change the terms of a prisoner's confinement. Alternatively, the Board argues that, if it must change petitioner's terms of confinement to life with the

possibility of parole or work release, then petitioner still is subject to consecutive 20-year minimum terms. The Board appears to argue that it *may* override the minimum terms and set a release date according to the matrix, but that it may do so only after a parole consideration hearing, which allows the Board to consider a variety of factors. *See* ORS 144.120 (1977) (describing parole release date hearing).

We first consider the finding that the Board must make at a rehabilitation hearing under ORS 163.105(4) (1977). Resolving that question requires interpreting the statute, which we do using the methodology outlined in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (stating that court first examines text and context of statutory provision at issue to determine legislature's intent).

■ Because the text of a statute is the best evidence of the legislature's intent, the starting point of our analysis is that text. *Id.* at 611. ORS 163.105(4) (1977) employs the conjunction "and": "If * * * the board finds that the prisoner is capable of rehabilitation *and* that the terms of his confinement should be changed * * *." (Emphasis added.) The use of the word "and" suggests that the legislature intended the Board to make two separate findings. Thus, the text of the statute supports the Board's argument.

■ We next look to context: other provisions of the same statute and other related statutes. *PGE*, 317 Or at 611; *see also Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole."). The statutory provision immediately preceding the provision at issue here, ORS 163.105(3) (1977), describes the disputed hearing in detail:

> "[T]he State Board of Parole, upon the petition of a prisoner [confined for aggravated murder], shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. *The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time.* * * *

"(a)   The prisoner shall have the burden of proving by a preponderance of the evidence that he is likely to be rehabilitated within a reasonable period of time[.]"

(Emphasis added.)

Several aspects of subsection (3) aid our analysis of the proper interpretation of subsection (4). First, we observe that subsection (3) provides that *[t]he sole issue*" shall be whether the prisoner is likely to be rehabilitated within a reasonable period of time. (Emphasis added.) That wording suggests that the legislature intended the Board to make one finding, and only one finding, at a hearing under the statute. Second, we note that paragraph (3)(a) provides that the prisoner has the burden of proving that he or she is likely to be rehabilitated. That provision is consonant with the emphatic wording of subsection (3) that the "sole issue" is whether the prisoner is likely to be rehabilitated within a reasonable period of time. Third, we note that subsection (3) provides that the sole issue "shall" be whether the prisoner is likely to be rehabilitated. (Emphasis added.) Thus, subsection (3) prohibits the Board and the prisoner from raising other issues at ·the hearing. Finally, we observe that subsection (3), which, we again note, details the procedural aspects of the hearing, refers to rehabilitation three times, but never refers, even obliquely, to changing the terms of confinement.

We turn to another provision of the same statute, ORS 163.105(5) (1977). That subsection provides:

"Not less than two years after the denial of *the relief sought* in a petition under this section, the prisoner may petition again for *a change in the terms of his confinement.* Further petitions for a change may be filed at intervals of not less than two years thereafter."

(Emphasis added.) Subsection (5) suggests that the "relief sought" is "a change in the terms of * * * confinement." That conclusion is reinforced by the wording of subsection (4): "If * * * the board finds * * * that the terms of * * * confinement should be changed * * *, it shall enter an order to that effect." The only meaningful function of a Board order under ORS 163.105 (1977) is whether the terms of a prisoner's confinement will change. Subsection (4) describes in further detail

what sort of "change" is possible: "the terms of * * * confinement should be changed to life imprisonment with the possibility of parole, or work release." Thus, the phrase "that the terms of confinement should be changed" in ORS 163.105(4) (1977) refers to the relief sought, as petitioner argues.

■    Finally, and also at the first level of analysis, this court looks to its previous case law, when that case law has construed authoritatively the relevant statutory wording. *Michels v. Hodges*, 326 Or 538, 545, 956 P2d 184 (1998). In *Severy v. Board of Parole*, 318 Or 172, 176, 864 P2d 368 (1993), this court considered an inmate's argument that the Board has the authority, under ORS 144.785(2) (1983), to "unsum" the inmate's consecutive minimum terms for aggravated murder.[6] The inmate in *Severy* had been sentenced, in part, under ORS 163.105(1) (1983) and had two sentences of life without the possibility of parole for 30 years, the second sentence to be served consecutively to the first. At a prison term hearing held five months after he was sentenced, the Board applied the matrix to the inmate's sentences, but it ultimately voted to sustain the inmate's consecutive minimum terms. This court held that the Board had no authority to alter the inmate's minimum terms under ORS 144.785(2) (1983):

> "The Board's only authority to alter a 30-year minimum imposed pursuant to ORS 163.105(1) was that authority set out in ORS 163.105(3) to (6).[7] That is, on a petition filed by the prisoner at any time after 20 years from the date of the imposition of the minimum, the Board must hold a hearing

---

[6] ORS 144.785(2) (1983) provides:

"When a prisoner is sentenced to two or more consecutive terms of imprisonment, the duration of the term of imprisonment shall be the sum of the terms set by the board pursuant to the ranges established for the offenses * * *; provided, however, *that the duration of imprisonment may be less than the sum of the terms if the board finds, by an affirmative vote of at least four of its members, that consecutive sentences are not appropriate penalties for the criminal offenses involved and that the combined terms of imprisonment are not necessary to protect the community security.*"

(Emphasis added.)

[7] In 1981, the legislature added a subsection to ORS 163.105 (1977), bringing the total number of subsections to six. Or Laws 1981, ch 873, § 4. That 1981 addition clarified the number of Board members that must vote affirmatively before the Board can grant relief under ORS 163.105(4) (1977).

to determine whether the prisoner is likely to be rehabilitated within a reasonable time. ORS 163.105(2). *Only if the Board finds that the prisoner is capable of rehabilitation may the Board change the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. ORS 163.105(4)*. Those provisions are a complete legislative policy. ORS 144.785(2) plays no role."

*Severy*, 318 Or at 179 (emphasis added). In a footnote, the court stated:

"We express no opinion regarding the Board's authority to alter a minimum term of imprisonment imposed on an aggravated murder conviction once the *Board has found that the prisoner is capable of rehabilitation*. * * *"

*Id*. at 179 n 8 (emphasis added). Although the *Severy* court did not confront directly the issue whether ORS 163.105(4) (1977) requires one or two findings, the statements quoted above suggest that the court assumed that the statute required only one finding: that the prisoner is capable of rehabilitation.

The Board argues that the *Severy* court's use of the word "may" supports its position in the present case ("Only if the Board finds that the prisoner is capable of rehabilitation *may* the Board change the terms of the prisoner's confinement * * *." *Id*. at 179.). Specifically, the Board argues that the word "may" suggests that an affirmative finding on rehabilitation permits, but does not require, the Board to change a prisoner's terms of confinement. Had the *Severy* court meant otherwise, the Board continues, the court would have used the word "must" instead of "may." The Board's argument is not well taken. The *Severy* court made the statement in question in the context of discussing the only circumstances under which the Board "may"—that is, has the authority or permission to—alter a minimum term. *See Webster's Third New Int'l Dictionary*, 1396 (unabridged ed 1993) (defining "may," in part, as "have permission to"). The Board misunderstands the *Severy* opinion in that respect and seeks a more expansive meaning than reasonably could have been intended.

■ On reviewing the results of our first-level analysis of ORS 163.105(4) (1977), we conclude that the legislative

intent is clear. Although the text can be read to mean that the legislature intended the Board to make two findings, we must construe both text and context *together*. The context - particularly the phrase "the sole issue" in ORS 163.105(3) - demonstrates that the legislature intended the Board to make only one finding. In light of both the text and context, the Board's interpretation of the statute is implausible. We therefore hold that the legislature intended that, in a hearing held under ORS 163.105(3) (1977), the Board must find only whether the prisoner is capable of rehabilitation.

We next consider the consequences of the Board's finding that petitioner is capable of rehabilitation. ORS 163.105(4) (1977) requires the Board to change the "terms of * * * confinement" to life imprisonment with the possibility of parole. That subsection does not define that phrase. The word "terms," as used in the subsection, could refer to the conditions of his confinement. *See Webster's Third New Int'l Dictionary* at 2358 (defining "terms," in part, as "conditions"). Looking to ORS 163.105(2) (1977), however, we conclude that the meaning of "terms of * * * confinement" is clear.

■ ORS 163.105(2) (1977), the subsection under which petitioner was sentenced, provides the sentence for one murder (a *single* crime): "[w]hen a defendant is convicted of *murder* defined as aggravated murder pursuant to subsection (2) of ORS 163.095 * * *." (Emphasis added.) ORS 163.105(2) (1977) is specific regarding the sentence for such a murder: "the court shall order that the defendant shall be confined for a minimum of 20 years without possibility of parole, release on work release, temporary leave or employment at a forest or work camp." The imposition of that specific sentence eventually may trigger the rehabilitation hearing described in ORS 163.105(3) and (4) (1977). If, at such a rehabilitation hearing, the prisoner proves by a preponderance of the evidence that the prisoner is likely to be rehabilitated within a reasonable period of time, then the Board must change the "terms of * * * confinement"—that is, the sentence imposed under ORS 163.105(2) (1977) for one aggravated murder—to life with the possibility of parole or work release.

■ Applying that analysis to this case, we conclude that the Board must change the first of petitioner's life sentences

to life with the possibility of parole or work release. Petitioner is entitled to have that change occur retroactively to January 26, 1994, the date that the Board found him to be capable of rehabilitation. On that date, petitioner began serving his second life sentence with a 20-year minimum term of confinement for his second conviction of aggravated murder. In 2009, 15 years from the date that he began serving that 20-year minimum term, petitioner may petition for a rehabilitation hearing, and that hearing also will be governed by ORS 163.105(3), (4), and (5) (1977). Only if the Board again finds that petitioner is capable of rehabilitation within a reasonable period of time, must the Board change petitioner's second aggravated murder sentence to life with the possibility of parole and work release. Only at that point would petitioner become eligible for parole.

In sum, in a rehabilitation hearing under ORS 163.105 (1977), the only finding that the Board must make is whether the prisoner is capable of rehabilitation. If the Board finds that the prisoner is capable of rehabilitation, then the Board must change the prisoner's aggravated-murder sentence to life with the possibility of parole. In this case, petitioner received two life sentences without the possibility of parole for 20 years, the second sentence to be served consecutively to the first. Given its finding regarding petitioner's capability of rehabilitation, the Board should have changed one of those sentences to life with the possibility of parole. Petitioner may petition for a second rehabilitation hearing after he serves 15 years of his second aggravated-murder sentence. ORS 163.105(3) (1977). Because petitioner is not eligible for parole unless the Board finds him capable of rehabilitation at that second hearing, we express no opinion in this case regarding either the applicability of the matrix or whether the Board erred in its findings in aggravation.

The decision of the Court of Appeals is affirmed. The order of the Board of Parole and Post-Prison Supervision is reversed, and the case is remanded to the Board for further proceedings.