Submitted on record and briefs December 5, 2003, judgment in case number 00C20058 reversed and remanded; money judgment in case number 01C19972 vacated and remanded, and otherwise affirmed August 4, 2004

# RAYMOND FRANCIS ROY,
*Appellant,*

*v.*

# Joan PALMATEER,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

## 00C20058, A116149 (Control)

# STATE ex rel RAYMOND FRANCIS ROY,
*Appellant,*

*v.*

# BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

## 01C19972; A117045
(Cases Consolidated)

95 P3d 1124

Raymond F. Roy, Jr., filed the briefs *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Erika L. Hadlock, Assistant Attorney General, filed the brief for respondents.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

Armstrong, J., concurring in part and dissenting in part.

**LANDAU, P. J.**

In this consolidated appeal, plaintiff challenges the trial court's dismissal of a writ of habeas corpus, its denial of his petition for alternative writ of mandamus, and its imposition of a filing fee in the latter proceeding. For the reasons explained below, we conclude that the trial court erred in dismissing the writ of habeas corpus and, accordingly, reverse the judgment in that case. Based on the trial court's erroneous imposition of a filing fee, we also vacate the judgment in the mandamus proceeding.

The relevant historical facts are not in dispute. Plaintiff was convicted of aggravated murder, ORS 163.095(2) (1983), for a crime he committed in May 1984. He was sentenced to life in prison with a minimum of 20 years without possibility of parole. ORS 163.105(2) (1983). In December 1999, he requested that the Board of Parole and Post-Prison Supervision (board) hold a hearing for the purpose of determining whether he was "likely to be rehabilitated within a reasonable period of time." ORS 163.105(3) (1983). On February 15, 2000, after hearing evidence, the board determined that plaintiff met that standard and converted the terms of his confinement to life imprisonment with the possibility of parole. ORS 163.105(4) (1983). The board set a projected parole release date of May 18, 2004, and scheduled an exit interview for November 2003.

In November 2000, plaintiff sought a writ of habeas corpus, asserting that, consistently with *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000), *cert den*, 534 US 1028 (2001), he was entitled to be released on parole as of February 15, 2000, the date on which the board found him capable of rehabilitation. The trial court issued the writ, the state filed a return, and plaintiff filed a replication.[1] The state then moved to dismiss the writ. In September 2001, the

---

[1] As described above, this consolidated appeal arises out of plaintiff's habeas corpus and mandamus actions. For convenience, we refer to defendants in those actions—respectively, the superintendent of the Department of Corrections institution in which plaintiff was confined and the Board of Parole and Post-Prison Supervision—collectively as the state.

trial court granted the motion on the ground that habeas corpus relief was not the appropriate remedy, and entered judgment dismissing the writ. In November 2001, plaintiff petitioned for an alternative writ of mandamus, again asserting that he was entitled to release on parole as of February 15, 2000; the trial court denied the petition.

Plaintiff now appeals the judgments in both proceedings. Meanwhile, while the appeal were pending, the board postponed plaintiff's parole release date from May 18, 2004, to May 18, 2006.

■ In his first assignment of error, plaintiff argues that the trial court erred in dismissing the writ of habeas corpus because, the board having found that he is capable of rehabilitation, he was entitled under *Norris* to immediate parole release as of the date of that finding. According to plaintiff, *Norris* stands for the proposition that, when the board makes such a finding under relevant versions of ORS 163.105(3), it lacks discretion to "sustain" the 20-year minimum term of confinement provided in ORS 163.105(2) or to apply the parole "matrix" to the person—that is, to establish a future parole release date for the person based on the person's offense severity, criminal history, and other applicable aggravating and mitigating factors. Rather, plaintiff maintains, the board must immediately release the person on parole in connection with the relevant sentence.[2] Plaintiff also argues that, if interpreted otherwise, ORS 163.105 (1983) violates the Reformation Clause of Article I, section 15, of the Oregon Constitution; the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and the proscriptions against cruel and unusual punishment in Article I, sections 13 and 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. Finally, plaintiff argues that the trial court erred in concluding that habeas corpus relief is not the proper remedy for the board's asserted errors because he lacks any other timely

---

[2] Apparently in the alternative, plaintiff argues that, even assuming that the parole matrix applies to him, he still is entitled to immediate release because application of the matrix in his case results in a prison term range of from 10 to 14 years and, by the time of his rehabilitation hearing in February 2000, he had served almost 16 years. Given our disposition, we do not reach that argument.

remedy such as judicial review under ORS 144.335 or mandamus.

In response, the state first concedes that the trial court erred in concluding that habeas corpus relief was not the proper remedy for plaintiff's claimed deprivation. It argues, however, that the trial court properly dismissed the writ because, as a matter of statutory construction, the board's finding that plaintiff was capable of rehabilitation under ORS 163.105(3) and (4) (1983) means only that plaintiff became *eligible* for future parole release, not that he is exempt from service of the 20-year minimum term provided in ORS 163.105(2) (1983) or from the board's standards and procedures pertaining generally to parole release—including a psychological or psychiatric evaluation and, if warranted, the postponement of his parole release date—as provided in ORS 144.125. The state notes that to interpret ORS 163.105 as obviating those generally applicable standards and procedures for parole release would mean that persons convicted of aggravated murder are subject to fewer constraints regarding such release than persons convicted of less serious crimes.

The state acknowledges that its proposed construction is at odds with what the court ordered in *Norris*. The state nevertheless argues that the opinion cannot really mean what it says. According to the state, the "primary issue" in that case was whether the relevant versions of ORS 163.105(3) and (4) required the board not only to find whether an offender is capable of rehabilitation, but also separately to find that the terms of the offender's confinement should be converted to life imprisonment with the possibility of parole. The Supreme Court properly determined, as the state suggests, that the statute requires only a single finding and that the "conversion" of the offender's sentence to one of life with possibility of parole necessarily follows from the finding that the offender is capable of rehabilitation. The state posits, however, that the court erred in apparently concluding that such a finding also results in an offender's automatic release on parole as of the date of the finding. According to the state, that question was not at issue in *Norris*; nor did the court provide any statutory construction analysis or other explanation supporting its conclusion in that regard.

The state therefore urges us to reject plaintiff's argument in this case notwithstanding the aspect of *Norris* that supports it.

A motion to dismiss a writ of habeas corpus is treated as the functional equivalent of a summary judgment motion. *Fort v. Palmateer*, 169 Or App 568, 570, 10 P3d 291 (2000) (citing *McClintock v. Schiedler*, 123 Or App 334, 336 n 2, 859 P2d 580 (1993)). We review the record in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Fort*, 169 Or App at 570 (citing *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997), and *Bedell v. Schiedler*, 307 Or 562, 564, 770 P2d 909 (1989)). Here, as we have noted, the parties do not dispute any material facts. Accordingly, whether plaintiff is entitled to relief is solely a question of law, namely, the proper interpretation and application of ORS 163.105 (1983).

ORS 163.105 (1983) provided, in part:

"(2)   When a defendant is convicted of murder defined as aggravated murder pursuant to ORS 163.095(2), the court shall order that the defendant shall be confined for a minimum of 20 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(3)   * * * [A]t any time after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *

"* * * * *

"(4)   If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life

imprisonment with the possibility of parole or work release. Otherwise, the board shall deny the relief sought in the petition."

At issue in this case is whether, once the board made the finding under subsection (3) that plaintiff is capable of rehabilitation, it was required to release him on parole in connection with the relevant sentence.

The Supreme Court spoke to that question in *Norris*. In that case, the offender was convicted of two counts of aggravated murder and was sentenced under ORS 163.105 (1977)[3] to two consecutive terms of life with minimums of 20 years without possibility of parole. *Norris,* 331 Or at 196. After 15 years, he petitioned for and received a hearing, at which the board found that he was capable of rehabilitation but declined to set a parole release date. *Id.* at 197. On reconsideration, the board "sustained" the offender's consecutive 20-year minimums and set a parole release date reflecting the combined 40-year minimum terms. We reversed and remanded. *Norris v. Board of Parole,* 152 Or App 57, 952 P2d 1037 (1998).

In his brief on review in the Supreme Court, the offender argued that, after the board found him capable of rehabilitation, it was required under ORS 163.105 (1977) to convert his prison term to one of life with possibility of parole and to treat him as a "parolable" offender; that is, it was required to apply the "parole matrix" to his offenses and to set a parole release date without regard to the statutory minimum terms.

In turn, the state framed the issue as whether ORS 163.105 (1977) required the board separately to find both that an offender was capable of rehabilitation and that the offender's sentence should be converted to life with possibility of parole; it argued that the statute required those separate findings and that, in that case, the board had not yet made the second finding. The state also posited that an effect of the latter determination—whether or not it was separately made—was that it permitted the board to set a parole release

---

[3] ORS 163.105 (1977) was identical in all relevant respects to the version of ORS 163.105 at issue here.

date through the application of relevant and generally applicable parole release criteria, which, according to the state, constituted yet another separate proceeding. The state also alluded to the possibility that the setting of a parole release date according to those criteria could "nullify" the 20-year statutory minimum.

In its opinion, the Supreme Court initially framed the issue as whether, under ORS 163.105 (1977), the board "had the authority to sustain [the offender's] minimum terms of confinement after an affirmative finding that [the offender] was likely to be rehabilitated within a reasonable period of time." *Norris*, 331 Or at 196. The court then described the parties' arguments as follows:

"Petitioner argues that the only issue at a rehabilitation hearing under ORS 163.105(4) (1977) is whether the prisoner is capable of rehabilitation. He contends that the statutory phrase 'and that the terms of * * * confinement should be changed' does not refer to a separate finding, but merely describes the relief to be given when the Board makes such a finding. Petitioner further argues that, in light of the Board's finding that he is capable of rehabilitation, the Board must convert the terms of his confinement to a parolable life sentence and set terms according to the matrix.

"As noted, the Board, for its part, argues that, under ORS 163.105(4) (1977), it must make *two* independent and co-equal findings before it may change the terms of a prisoner's confinement. Alternatively, the Board argues that, if it must change petitioner's terms of confinement to life with the possibility of parole or work release, then petitioner still is subject to consecutive 20-year minimum terms. The Board appears to argue that it *may* override the minimum terms and set a release date according to the matrix, but that it may do so only after a parole consideration hearing, which allows the Board to consider a variety of factors. *See* ORS 144.120 (1977) (describing parole release date hearing)."

*Norris*, 331 Or at 202-03 (emphasis and omission in original).

The court proceeded to construe ORS 163.105(4) (1977). Based on the statute's text and context, it concluded that the board was required to make only one finding—

whether an offender is capable of rehabilitation—and that, having found that an offender met that standard, the board was required to change the terms of the offender's confinement to life with the possibility of parole. *Norris*, 331 Or at 203-07.

Having interpreted the statute, the court then applied it as follows:

"Applying that analysis to this case, we conclude that the Board must change the first of [the offender's] life sentences to life with the possibility of parole or work release. [The offender] is entitled to have that change occur retroactively to January 26, 1994, the date that the Board found him to be capable of rehabilitation. *On that date, [the offender] began serving his second life sentence with a 20-year minimum term of confinement for his second conviction of aggravated murder. In 2009, 15 years from the date that he began serving that 20-year minimum term, petitioner may petition for a rehabilitation hearing,* and that hearing also will be governed by ORS 163.105(3), (4), and (5) (1977). Only if the Board again finds that petitioner is capable of rehabilitation within a reasonable period of time, must the Board change petitioner's second aggravated murder sentence to life with the possibility of parole and work release. Only at that point would petitioner become *eligible for parole*.

"In sum, in a rehabilitation hearing under ORS 163.105 (1977), the only finding that the Board must make is whether the prisoner is capable of rehabilitation. If the Board finds that the prisoner is capable of rehabilitation, then the Board must change the prisoner's aggravated-murder sentence to life with the possibility of parole. In this case, petitioner received two life sentences without the possibility of parole for 20 years, the second sentence to be served consecutively to the first. Given its finding regarding petitioner's capability of rehabilitation, the Board should have changed one of those sentences to life with the possibility of parole. *Petitioner may petition for a second rehabilitation hearing after he serves 15 years of his second aggravated-murder sentence.* ORS 163.105(3) (1977). Because petitioner is not *eligible for parole* unless the Board finds him capable of rehabilitation at that second hearing, *we express no opinion in this case regarding either*

*the applicability of the matrix or whether the Board erred in
its findings in aggravation."*

*Id.* at 207-08 (emphasis added).

The state is correct that the primary issue presented
by the parties in *Norris* was whether, under ORS 163.105(3)
and (4) (1977), a finding that an offender is capable of reha-
bilitation necessarily results in the conversion of the
offender's sentence to life with the possibility of parole or
whether that conversion depends on a separate finding by
the board. And the court's resolution of that issue is clear:
only one finding is required—whether an offender is capable
of rehabilitation—and that such a finding necessarily
requires the board to convert the terms of the offender's sen-
tence to life "with the possibility of parole." *Norris*, 331 Or at
207.

The remaining aspects of the court's opinion are
more problematic. As the foregoing quotation from the opin-
ion plainly demonstrates, in applying its legal conclusions to
the case before it, the court stated that, as of January 1994—
the date that the board found the offender in that case to be
capable of rehabilitation, and therefore also the date that the
board was required to convert his sentence—the offender
"began serving" his consecutive sentence. The court also
stated that the offender could petition for a hearing in con-
nection with his consecutive sentence in 2009. Those state-
ments appear necessarily to rest on an understanding by the
court that, as a matter of law, an offender subject to ORS
163.105(3) and (4) must automatically be released on parole
in connection with the relevant sentence on the date on which
the board finds that the offender is capable of rehabilitation
and, concomitantly, converts the offender's sentence. We can
conceive of no other justification for the court's statements.

The state may well be correct that the court's state-
ments appear to be at odds with other portions of the opinion
in *Norris*. The court, for example, stated—twice—that, if the
board later found that the offender was capable of rehabili-
tation in connection with his *consecutive* sentence, the
offender would then become "eligible" for parole. Even more
notably, the court specifically declined to express any opinion
regarding the issue whether, if the board found the offender

to be capable of rehabilitation in connection with his consecutive sentence, the parole matrix criteria would be applicable and the issue whether the board had erred in its previous findings regarding relevant factors under that matrix—questions that would not arise if, as a matter of law, a capable-of-rehabilitation finding and the concomitant conversion of the sentence resulted in automatic parole release. In a similar vein, there is some tension between the court's conclusion in *Norris* that the offender was entitled to automatic parole release upon conversion of his first sentence and the legislature's use, in ORS 163.105(3) and (4), of the phrase *"possibility* of parole." (Emphasis added.) *See Webster's Third New Int'l Dictionary* 1771 (unabridged ed 1993) (defining the noun "possibility" as a thing that is "possible whether theoretically, in general, or under a specified set of conditions" and as "a particular thing that may take place [or] eventuate," and defining the adjective "possible" as indicating that a thing "may or may not occur" or is "dependent on contingency").

Interestingly, in response to the offender's petition for reconsideration in *Norris*, the state advanced that very argument to the Supreme Court, that is, that the court had addressed matters not discussed by the parties and had "miscontrue[d] the legal and practical effects" of a capable-of-rehabilitation finding. The state argued that, even after an offender has been determined capable of rehabilitation and the terms of the offender's sentence have been converted to life with possibility of parole, the offender remains subject to the 20-year minimum as well as to further postponement of his or her parole release date. The court, however, denied the petition.

The dissent suggests that we may avoid the court's holding in *Norris* merely by treating it as applicable only to the facts of that case, namely, when an offender has multiple consecutive ORS 163.105 sentences. As we understand it, the dissent contends that, in *Norris*, it was only because of the existence of the defendant's second ORS 163.105 sentence and the need to make a capable-of-rehabilitation finding in relation to that sentence that "no [parole release] date could or would be set" on the first sentence. 194 Or App at 347 (Armstrong, J., concurring in part and dissenting in part).

The problems with the dissent's suggestion are two-fold. First, it does not so much provide an explanation of the inconsistencies in the court's opinion in *Norris* as merely restate them. The dissent never explains *why* two consecutive ORS 163.105 sentences should be treated differently from each other, much less why we should treat the sentence in this case as being more like the second sentence in *Norris*—to which, the Supreme Court postulated, the parole matrix criteria might be applicable—than the first. For example, the dissent does not identify, and we do not discern, anything in ORS 163.105 itself that suggests that consecutive sentences imposed under that statute operate differently in relation to each other than do other consecutive indeterminate sentences.

Second, in suggesting that inconsistencies in *Norris* are attributable to the facts of that case, the dissent relies on a mistaken understanding of the board's authority in regard to consecutive indeterminate sentences generally. In particular, in discussing the consequences of the consecutive sentences in *Norris*, the dissent characterizes the offender as being "not someone for whom the board could establish a parole release date." 194 Or App at 347 (Armstrong, J., concurring in part and dissenting in part). However, the existence of a consecutive indeterminate sentence does not preclude the board from establishing a parole release date on the preceding indeterminate sentence; rather, it precludes only the offender's actual *release from prison*. Thus, the parole board typically sets a prison term and a related parole release date as to each of multiple consecutive sentences. *Cf.* OAR 255-035-0021 (Dec 6, 1988) (establishing method for setting successive prison terms for each of several consecutive indeterminate sentences). Indeed, consistently with that general principle and with the even more basic principle that consecutive sentences do not run at the same time, it is not apparent to us how the offender in *Norris* could begin serving his consecutive sentence on a particular date, as ordered by the court, if he were not "released" on parole on that same date from service of the prison term of his first sentence—whether that "release" occurred automatically, as the *Norris* court apparently held, or through application of the parole

matrix criteria, as the state argued was proper and as indisputably occurs in other contexts.

■    We are left, then, with the *Norris* court's pronouncement that, on the date that the board made its finding that the offender was capable of rehabilitation, the offender began serving his consecutive sentence. Whether at odds with other portions of the opinion or not, the statement is part of the court's disposition of the case. We therefore are constrained not to regard it as mere *dictum*; to the contrary, we are bound to follow it. *Compare Gregory v. Salem General Hospital*, 175 Or 464, 478, 153 P2d 837 (1944) (statements that were essential to the disposition of "an issue" were not *dictum*), *with State v. Thompson*, 166 Or App 370, 375, 998 P2d 762, *rev den*, 331 Or 192 (2000) (observation in another case was *dictum* where the observation pertained to a question that was not an issue in the other case and was not necessary in deciding the issue in that case), *and Blanchard v. Kaiser Foundation Health Plan*, 136 Or App 466, 470, 901 P2d 943, *rev den*, 322 Or 362 (1995) (where statement in a previous case was "entirely unnecessary to the disposition of the appeal," statement was *dictum* and court was not bound by it). *See also Napier v. Sheridan*, 24 Or App 761, 772, 547 P2d 1399 (1976) (statement of Oregon Supreme Court, even though apparently *dictum*, was "clear and recent"; Court of Appeals therefore regarded itself as "bound" by statement). For the same reason, we are not at liberty to follow the alternative course suggested by the dissent: that, having discerned internal inconsistencies in the court's opinion in *Norris*, we properly can choose to give effect to only those aspects of the opinion suggesting that a person found capable of rehabilitation of parole is merely *eligible* for, not entitled to, parole. 194 Or App at 349 (Armstrong, J., concurring in part and dissenting in part).

■    Accordingly, we conclude that, consistently with *Norris*, a finding by the board under ORS 163.105(3) and (4) (1983) that an offender sentenced under ORS 163.105 (1983) is capable of rehabilitation entitles the offender to immediate release on parole in connection with the relevant sentence. Conversely, the *timing* of the offender's parole release is not subject to criteria set out in otherwise generally applicable statutes and rules relating to parole release, such as ORS

144.120 (relied on by the state in *Norris*), ORS 144.125 (relied on by the state in this case), and OAR chapter 255.[4]

We note that this is not the first occasion on which we have considered the significance of *Norris*. Recently, in *Larsen v. Board of Parole*, 191 Or App 526, 84 P3d 176 (2004), we considered whether the standards and procedures set out in the applicable version of ORS 163.105 applied only in the "limited time frame" after the offender is permitted to petition for a hearing and before the offender has served the applicable 20- or 30-year minimum sentence under ORS 163.105(1) or (2). We concluded that it did not. In analyzing that issue, we stated:

> "It is not disputed that the provisions of ORS 163.105(3) and (4) provide a basis for the board to, in essence, shorten the judicially imposed minimum sentences of 20 or 30 years. *See Norris v. Board of Parole*, 331 Or 194, 207-08, 13 P3d 104 (2000), *cert den*, 534 US 1028 (2001) (after serving 15 years, on date that petitioner had been found to be capable of rehabilitation pursuant to ORS 163.105(3), he was deemed to have completed the judicially imposed minimum portion of his sentence)."

*Larsen*, 191 Or App at 532.

Turning to the facts of this case, the parties do not dispute that the board found on February 15, 2000, that plaintiff was capable of rehabilitation. Under *Norris*, it follows that he was entitled as a matter of law to be released on parole in connection with the relevant sentence on that date. The trial court therefore erred in dismissing the writ of habeas corpus.

Our resolution on statutory grounds of plaintiff's first assignment of error obviates the necessity to consider plaintiff's constitutional challenges to the board's action under that statute. In addition, because plaintiff sought no additional relief in his petition for alternative writ of mandamus, we need not address his second assignment of error,

---

[4] We express no opinion on the application of those statutes and rules in respects other than the timing of the offender's release, such as administration of a psychological or psychiatric evaluation, the conduct of an exit interview, or the setting of parole conditions, *see* OAR chapter 255, so long as those functions do not impede the offender's release on the proper parole release date, as discussed above.

relating to the trial court's dismissal of his petition for that writ. Finally, the state concedes that the trial court erred entering a money judgment against plaintiff in the amount of the filing fee in the mandamus proceeding in the absence of any findings respecting plaintiff's ability to pay that fee. We agree that the court erred, accept the state's concession, and vacate the judgment on that ground. *See State ex rel Baker v. Cook*, 171 Or App 719, 16 P3d 1184 (2000).

Judgment in case number 00C20058 reversed and remanded. Money judgment in case number 01C19972 vacated and remanded, and otherwise affirmed.

**ARMSTRONG, J.**, concurring in part and dissenting in part.

The majority concludes that the trial court erred in dismissing the writ of habeas corpus in this case because petitioner is entitled to be released on parole on his life sentence for aggravated murder. According to the majority, *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000), *cert den*, 534 US 1028 (2001), compels that conclusion. The majority is wrong. It focuses on one aspect of *Norris* that arguably conflicts with other aspects of the decision without making any effort to reconcile the conflict. In fact, the conflicting provisions can be harmonized. When they are harmonized, *Norris* is not authority for the majority's conclusion that petitioner is entitled to be released on parole, and there is no other support for that conclusion. I therefore dissent from the majority's decision to reverse the dismissal of the writ of habeas corpus. I concur in its resolution of the balance of the appeal.

A jury convicted petitioner of aggravated murder for a murder that he committed in 1984. Pursuant to ORS 163.105(2) (1983), the circuit court entered a judgment in December 1984 that sentenced petitioner on that conviction to life in prison with a minimum term of 20 years' imprisonment without the possibility of parole or work release.[1] Under ORS 163.105(3), a person who has served 15 years of a

---

[1] Because 1984 is the year in which petitioner committed the murder for which he was convicted, the statutes that apply to his conviction are the 1983 versions of them. Hence, all citations to statutes in this opinion are to the 1983 versions.

20-year minimum term for aggravated murder can require the Board of Parole and Post-Prison Supervision (board) to hold a hearing to determine if he is a person who is "likely to be rehabilitated within a reasonable period of time." Petitioner requested such a hearing, which the board held. As a result of the hearing, the board issued an order on February 15, 2000, that found that petitioner met the statutory rehabilitation standard and that converted the terms of petitioner's confinement to life imprisonment with the possibility of parole. The order also set a projected parole release date for petitioner of May 18, 2004.

In November 2000, petitioner filed a petition in circuit court for a writ of habeas corpus, contending that he was entitled to be released on parole when the board issued its February 15, 2000, order. The circuit court issued the writ but later dismissed it. Whether the court erred in dismissing the writ turns on whether the board's order entitled petitioner to be released on parole when the board issued the order. The resolution of that issue depends, in turn, on *Norris*.

*Norris* involved a petitioner who was serving consecutive life sentences for aggravated murder, both of which had 20-year minimum terms. Pursuant to ORS 163.105, the board held a hearing to determine if the petitioner was likely to be rehabilitated within a reasonable time. The board issued an order that found that he was such a person. The board also issued an order in which it decided not to modify the consecutive 20-year minimum terms. As a consequence, it set the petitioner's projected parole release date for a date in 2018, which was 40 years after he had begun serving his first aggravated murder sentence.

On judicial review of the board's final order, we reversed the order. On Supreme Court review of our decision, the court also concluded that the board had erred in issuing its final order, but it relied on grounds different from ours. As framed by the parties, the issue for the court was the effect to be given to the board's finding that the petitioner was likely to be rehabilitated within a reasonable time. The petitioner contended that the effect of the finding was to eliminate both of the 20-year minimum sentences and to require the board

to apply the matrix system to set his parole release date. The board contended that the sole effect of the finding was to make the petitioner a person who could be paroled. It did not affect the consecutive 20-year minimum sentences, which could be altered only if the board made additional findings to override them. Consequently, the petitioner would be required to serve 40 years in prison before he would become eligible to be released on parole.

The court did not agree with either party's position. It concluded that the finding affected only the first of the two consecutive aggravated murder sentences. The consequences of the finding on *that* sentence were (1) to remove the restriction that barred the petitioner from parole or work release and (2) to eliminate the 20-year minimum term. *Norris,* 331 Or at 207-08.

The modification of the first aggravated murder sentence did not affect the second aggravated murder sentence that was consecutive to it. The second sentence still barred the petitioner from parole or work release, and that bar would remain in effect until the board found on *that* sentence that the petitioner was likely to be rehabilitated within a reasonable period of time. Furthermore, the board could not make that finding until the petitioner had served at least 15 years on the second sentence, at which point the petitioner could petition the board to conduct a hearing to determine whether he met the statutory rehabilitation standard. Only if the board made a rehabilitation finding after such a hearing would the second aggravated murder sentence be modified, which would then make the petitioner eligible for parole. *See id.* at 208; ORS 163.105(4).

The majority and I appear to agree on the foregoing statements about *Norris* and ORS 163.105. We part company on the import of the court's statement in *Norris* that the petitioner began serving his *second* aggravated murder sentence on the date that the board issued its rehabilitation order on the *first* aggravated murder sentence, which converted the first sentence to one on which he could be paroled. Normally, a person does not start serving a sentence that is consecutive to a preceding indeterminate sentence until the person has been paroled on the first sentence. Because the court said in

*Norris* that the petitioner began serving his second aggravated murder sentence when the board issued its rehabilitation order that modified the terms of the first aggravated murder sentence, the majority reasons that the *Norris* court's statement has to mean that the petitioner not only became *eligible for parole* on the first sentence on entry of the rehabilitation order but *had to be paroled* on the first sentence on entry of the order. It therefore concludes that anyone who is serving an aggravated murder sentence that is subject to ORS 163.105, such as petitioner, has to be paroled when the board enters an order that finds that the person is likely to be rehabilitated within a reasonable time. In other words, although the statute and *Norris* say that the finding converts the relevant sentence to one in which the person has a *possibility* of parole, the majority interprets *Norris* to establish that the sentence is converted to one in which the person has a *certainty* of *immediate* parole.

The flaw in the majority's reasoning is that it fails to recognize the significance to be attached to the fact that the petitioner in *Norris* was serving consecutive aggravated murder sentences that were subject to ORS 163.105. Until the board made a rehabilitation finding on the *second* aggravated murder sentence, the petitioner was not someone who was eligible for parole, which meant that he was not someone for whom the board could establish a parole release date. *See Norris*, 331 Or at 208. Because he was not such a person, there was no parole date that applied to his first sentence when the board issued its rehabilitation order, and the court appears to have assumed that no date could or would be set on that sentence until the board issued a rehabilitation order on the second sentence. *See id.*; *Severy v. Board of Parole*, 318 Or 172, 178-79, 864 P2d 368 (1993); ORS 144.110(2)(b)(A).[2]

---

[2] ORS 144.110(2)(b)(A) provides:

"Notwithstanding the provisions of ORS 144.120 and 144.780:

"\* \* \* \* \*

"(b) The board shall not release a prisoner on parole:

"(A) Who has been convicted of aggravated murder defined as aggravated murder under the provisions of ORS 163.095, except as provided in ORS 163.105[.]"

In the context of consecutive aggravated murder sentences that are subject to ORS 163.105, that provision can be understood to mean that the board cannot release an inmate on parole on *either* sentence until it has made the rehabilitation finding

Nevertheless, there had to be a date on which the petitioner could begin serving the second sentence, and the court concluded that the date on which the board issued its rehabilitation order that modified the terms of the first sentence was the appropriate date to use for that purpose.

Given that understanding of *Norris*, it follows that the majority is wrong to interpret the case as establishing that a person for whom the board issues a rehabilitation order under ORS 163.105 is a person who must be released on parole on the date that the order is issued. Furthermore, even if my understanding of *Norris* were incorrect, the majority's application of *Norris* to this case would still be wrong.

At a minimum, the majority recognizes that its conclusion that *Norris* establishes that an inmate must be released on parole on an aggravated murder sentence when the board makes a rehabilitation finding under ORS 163.105 conflicts with other aspects of *Norris*. For example, the court said in *Norris* that a rehabilitation finding on the second aggravated murder sentence in that case would make the petitioner "eligible" for parole. However, according to the majority, the petitioner would not just be eligible for parole when the board made the finding, he would have to be paroled.

The court also said in *Norris*:

> "Because [the] petitioner is not eligible for parole unless the Board finds him capable of rehabilitation at [the] second hearing, we express no opinion in this case regarding either the applicability of the matrix or whether the Board erred in its findings in aggravation."

331 Or at 208. That discussion refers to questions that had been presented by the parties in *Norris* concerning the calculation of the petitioner's parole release date. Implicit in

---

required by ORS 163.105 on *both* sentences. Whether or not that is the correct understanding, the *Norris* court appears to have interpreted the statute to work that way, *see Norris*, 331 Or at 208, which means that, if the petitioner could not be released on parole on the first sentence, then he could never begin serving the second sentence. The court resolved the conundrum by treating the date that the board issued its rehabilitation order on the first sentence as the date on which the petitioner began serving the second sentence.

that statement is the assumption that the board would calculate a parole release date for the petitioner *after* it issued a rehabilitation order on the second sentence. Until it did that, any discussion of the factors by which it would make that calculation was premature. Again, however, according to the majority, there would be no parole release date to establish for the sentences, because the petitioner would have to be released on parole when the board issued its rehabilitation order on the second sentence. Hence, the *Norris* court was wrong to suggest that the matrix and aggravation issues would not need to be addressed *until* the board issued a second rehabilitation order. According to the majority, *Norris* necessarily rendered those issues moot.

Assuming that the apparent conflicts in *Norris* cannot be reconciled,[3] the majority does not explain why it gives effect to one side of the conflict rather than the other. If we must choose, I believe that we should apply *Norris* in a way that is most consistent with the relevant statutes.[4] That application is one that makes people serving aggravated murder sentences that are subject to ORS 163.105 eligible for parole when the board issues a rehabilitation order but does not require them to be paroled when the board issues the order.[5]

In summary, the majority errs in concluding that *Norris* requires us to conclude that the board was required to release petitioner on parole on the date that it issued its order that found that he was likely to be rehabilitated within a reasonable time. There is no other ground that petitioner has raised that establishes that the trial court erred in dismissing his claims. Hence, I respectfully dissent from the decision

---

[3] Of course, they can be. *See* 194 Or App at 345-48 (Armstrong, J., concurring in part and dissenting in part).

[4] *See Aylett v. Mardis*, 59 Or App 109, 111-14, 114 n 6, 650 P2d 165, *rev den*, 294 Or 212 (1982) (court refused to follow erroneous Supreme Court decision in case that conflicted with controlling legal principle).

[5] The incongruity of a contrary understanding of the statutes should be obvious. It makes no sense for ORS 163.105 to focus on whether an inmate is likely *to be rehabilitated* within a reasonable time but to require the inmate to be immediately released on parole *before he has been rehabilitated.* If there are conflicting aspects of *Norris* and we cannot give effect to one aspect of it without rejecting another, then we should reject the aspect that makes no sense. *See Aylett*, 59 Or App at 111-14, 114 n 6.

to reverse the trial court judgment that dismissed the writ of habeas corpus.