Argued and submitted September 7, decision of Court of Appeals reversed, and
cases remanded to Court of Appeals for further proceedings December 1, 2005

RAYMOND FRANCIS ROY,
*Respondent on Review,*

*v.*

Joan PALMATEER,
Superintendent,
Oregon State Penitentiary,
*Petitioner on Review.*

(CC 00C20058; CA A116149 (Control))

STATE ex rel RAYMOND FRANCIS ROY,
*Respondent on Review,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Petitioner on Review.*

(CC 01C19972; CA A117045; SC S51941)
(Cases Consolidated)

124 P3d 603

Erika L. Hadlock, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioners on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Bear Wilner-Nugent, Portland, argued the cause and filed the response and brief for respondent on review.

BALMER, J.

**BALMER, J.**

This case requires us to determine whether plaintiff, an inmate, is entitled to immediate release on habeas corpus because the Board of Parole and Post-Prison Supervision (board) has determined that he is "likely to be rehabilitated within a reasonable period of time." ORS 163.105(3) (1983). The Court of Appeals agreed with plaintiff that he is entitled to immediate release. We conclude, however, that the Court of Appeals erred in its reading of this court's prior cases and the applicable statutes. We therefore reverse and remand the case to the Court of Appeals for further proceedings.

Plaintiff filed a petition for a writ of habeas corpus, naming as defendant the superintendent of the Oregon State Penitentiary, where he is confined. He argued that, because the board had found that he was likely to be rehabilitated within a reasonable time, the superintendent should release him immediately. As we describe in greater detail below, plaintiff later filed a petition for an alternative writ of mandamus against the board, making the same argument that he made in his habeas corpus petition. The trial court ruled against plaintiff on both petitions. Plaintiff appealed those separate judgments. The Court of Appeals consolidated the appeals for argument and decision and reversed the judgment in the habeas corpus case. *Roy v. Palmateer*, 194 Or App 330, 95 P3d 1124 (2004). We allowed the state's petition for review and, as noted, now reverse.[1]

The facts that give rise to the present case are undisputed. In 1984, plaintiff was convicted of aggravated murder, a crime that he had committed earlier that year. *See* ORS 163.095 (1983) (describing aggravated murder). The trial court sentenced plaintiff to life in prison. Under ORS 163.105(2) (1983), plaintiff had to serve 20 years of that sentence without the possibility of parole or work release. In December 1999, plaintiff asked the board to hold a hearing pursuant to ORS 163.105(3) (1983) to determine whether he was "likely to be rehabilitated within a reasonable period of time." On February 15, 2000, the board made that finding.

---

[1] For convenience, like the Court of Appeals, we refer to the superintendent and the board collectively as the state.

The board then converted plaintiff's term of confinement to life imprisonment with the possibility of parole, as ORS 163.105(4) (1983) required, and set a projected parole release date of May 18, 2004.[2]

In November 2000, plaintiff filed a petition for a writ of habeas corpus. He argued that, under this court's decision in *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000), he was entitled to release as of February 15, 2000, the date on which the board found him capable of rehabilitation. The state moved to dismiss on the grounds that a writ of habeas corpus was an inappropriate procedure to challenge the board's failure to order immediate release, and the trial court dismissed the petition. In December 2001, plaintiff petitioned for an alternative writ of mandamus, again asserting his claim that *Norris* required his release as of the date that the board determined he was capable of rehabilitation.[3] The trial court denied the petition for a writ of mandamus. Plaintiff appealed the adverse judgments in both the habeas corpus and mandamus actions to the Court of Appeals.

On appeal, the state conceded that the trial court had erred in concluding that habeas corpus relief was not the proper remedy for plaintiff's claimed deprivation but, on the merits, argued that plaintiff was not entitled to immediate release. The Court of Appeals, however, accepted plaintiff's argument that *Norris*, when applied to the facts of plaintiff's case, required his immediate release on parole.[4] *Roy*, 194 Or App at 342-43. Judge Armstrong dissented as to the majority's treatment of *Norris*, arguing that the majority had misread that opinion. *Id.* at 344-48 (Armstrong, J., concurring in part and dissenting in part). As noted, we granted review and now reverse the decision of the Court of Appeals.

---

[2] For reasons unrelated to the issues discussed here, the board later postponed plaintiff's parole release date to May 18, 2006.

[3] Plaintiff also asserted federal and state constitutional claims in both the habeas corpus and mandamus petitions.

[4] In light of that conclusion, the Court of Appeals did not reach plaintiff's constitutional challenges to the board's action, nor did it address his contention that the trial court had erred in dismissing his petition for writ of mandamus.

In *Norris*, this court construed the 1977 version of ORS 163.105, which is not materially different from the 1983 version of that statute that is at issue here.[5] *Norris* involved an inmate (Norris) who had been convicted of two counts of aggravated murder and sentenced to two consecutive life terms. Norris's minimum term of incarceration under each sentence was 20 years. In response to Norris's petition under ORS 163.105(3) (1977), the board found that Norris was likely to be rehabilitated within a reasonable period of time. The board, however, did not convert Norris's first life sentence to life with the possibility of parole. The Court of Appeals reversed, and the board sought review in this court. Before this court, the board argued that ORS 163.105(4) (1977) required it to make two independent findings before it could change the terms of an inmate's confinement: first, that an inmate was capable of rehabilitation and, second, that the inmate's sentence *should be* converted to life with the possibility of parole. 331 Or at 200, 202-03. Because the board had not made the second finding, it argued, it neither was required nor permitted to modify Norris's sentence. Alternatively, the board argued that, if it was required to convert an inmate's life sentence to life with the possibility of parole, the

---

[5] ORS 163.105 (1983) provided, in part:

"(2) When a defendant is convicted of murder defined as aggravated murder pursuant to ORS 163.095(2), the court shall order that the defendant shall be confined for a minimum of 20 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(3) * * * [A]t any time after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *

"* * * * *

"(4) If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise, the board shall deny the relief sought in the petition."

Since 1983, the legislature has modified ORS 163.105 on numerous occasions.

inmate nevertheless would remain subject to his minimum sentences. *Id.* at 203. The board then would have the authority to override those sentences after a parole consideration hearing, pursuant to ORS 144.120 (1977), which would allow the board to consider a variety of factors to determine if the inmate should be paroled. *Id.*

After examining the text and context of ORS 163.105 (1977), this court held, among other things, that the only finding that the parole board must make in a rehabilitation hearing is whether the inmate is capable of rehabilitation. The court concluded that "the legislature intended that * * * the [b]oard must find only whether the prisoner is capable of rehabilitation" and, once having made that finding, "the [b]oard must change the first of petitioner's life sentences to life with the possibility of parole or work release." *Norris*, 331 Or at 207-08. The court then ruled that Norris began serving his second life sentence on the date that the board had made its finding that he was capable of rehabilitation as to his first sentence. This court stated:

> "[T]he [b]oard must change the first of petitioner's life sentences to life with the possibility of parole or work release. *Petitioner is entitled to have that change occur retroactively to January 26, 1994, the date that the [b]oard found him to be capable of rehabilitation. On that date, petitioner began serving his second life sentence with a 20-year minimum term of confinement for his second conviction of aggravated murder.* In 2009, 15 years from the date that he began serving that 20-year minimum term, petitioner may petition for a rehabilitation hearing and that hearing also will be governed by ORS 163.105(3), (4), and (5) (1977). Only if the [b]oard again finds that petitioner is capable of rehabilitation within a reasonable period of time, must the [b]oard change petitioner's second aggravated murder sentence to life with the possibility of parole and work release. Only at that point would petitioner become eligible for parole."

*Norris*, 331 Or at 207-08 (emphasis added). We turn to the Court of Appeals' analysis in this case, which relied heavily on the foregoing passage from *Norris*.

The Court of Appeals concluded that *Norris* stands for the proposition that "an offender subject to ORS

163.105(3) and (4) [(1983)] must automatically be released on parole in connection with the relevant sentence on the date on which the board finds that the offender is capable of rehabilitation and, concomitantly, converts the offender's sentence." *Roy*, 194 Or App at 339. The Court of Appeals also concluded that "the *timing* of the offender's parole release is not subject to criteria set out in otherwise generally applicable statutes and rules relating to parole release * * *." 194 Or App at 342-43 (emphasis in original).

The Court of Appeals majority ascribed significance to the fact that, in *Norris*, this court expressly declined to decide two questions that would arise if the board later found the inmate in that case to be capable of rehabilitation in connection with his *second* life sentence: (1) whether the parole matrix criteria would then be applicable, and (2) whether the board had erred in its previous findings regarding relevant factors under that matrix. *Roy*, 194 Or App at 339-40. Those are questions that would not arise if a capable-of-rehabilitation finding resulted in automatic parole release. Finally, the Court of Appeals perceived "some tension" between this court's conclusion that Norris was entitled to automatic parole release on conversion of his first sentence and the legislature's use of the phrase "possibility of parole" in ORS 163.105(4). *Id.* at 340. In light of the foregoing considerations, the Court of Appeals concluded:

> "We are left, then, with the *Norris* court's pronouncement that, on the date that the board made its finding that the offender was capable of rehabilitation, the offender began serving his consecutive sentence. Whether at odds with other portions of the opinion or not, the statement is part of the court's disposition of the case. We therefore are constrained not to regard it as mere *dictum*; to the contrary, we are bound to follow it."

*Roy*, 194 Or App at 342.

In his separate opinion, Judge Armstrong asserted that the majority had focused on one aspect of *Norris* that arguably conflicts with other aspects of the decision without making any effort to reconcile the conflict and that the majority had failed to recognize the significance of the fact that Norris was serving consecutive sentences. *Id.* at 344-47

(Armstrong, J., concurring in part and dissenting in part). Judge Armstrong pointed out that, in *Norris*, a rehabilitation finding on the *second* aggravated murder sentence would have made Norris merely "eligible" for parole, not entitled to immediate parole. *Id.* at 347. He argued that the seemingly conflicting provisions of *Norris* may be harmonized by recognizing that this court had to pick some date as the starting date for Norris to begin serving his second sentence. According to Judge Armstrong, this court in *Norris* simply chose the date on which the board had issued its rehabilitation order as the appropriate date. *Id.* at 348. As a result, Judge Armstrong reasoned, *Norris* was not authority for the majority's conclusion that plaintiff was entitled to be released on parole. He articulated what he viewed as the better approach to applying *Norris* in the context of this case:

> "I believe that we should apply *Norris* in a way that is most consistent with the relevant statutes. That application is one that makes people serving aggravated murder sentences that are subject to ORS 163.105 eligible for parole when the board issues a rehabilitation order but does not require them to be paroled when the board issues the order."

*Id.* at 349 (footnotes omitted).

On review, the state argues that the Court of Appeals erred in holding that plaintiff is entitled to immediate release on parole because neither the statute nor the case law compels that conclusion. The state points out that, under ORS 163.105(2) (1983), inmates convicted of aggravated murder must be confined for a minimum of 20 years without the possibility of parole. Although an inmate may seek a hearing regarding likelihood of rehabilitation after 15 years of confinement, no statute requires that the minimum period of 20 years be shortened if the board concludes that the inmate is "likely to be rehabilitated within a reasonable period of time." Instead, the state contends that such a finding converts the inmate's sentence to a life sentence with a minimum of 20 years and the *possibility* of parole after the minimum period of years has been served. *See* ORS 163.105(4) (1983) ("the order shall convert the terms of the

prisoner's confinement to life imprisonment with the possibility of parole or work release").[6] According to the state, the pertinent statute provides only for the possibility of parole, not for immediate release, once the board finds that an inmate is capable of rehabilitation.

Second, the state argues, *Norris* does not require plaintiff's immediate release once the board has made its finding. The state maintains that the issue in *Norris* was whether the board needed to make any findings, in addition to a finding of likely rehabilitation, before ordering the conversion of the inmate's sentence to life with the possibility of parole under ORS 163.105(4) (1977). In the state's view, *Norris* held that no additional findings were necessary, and once the board determined that the inmate was capable of rehabilitation, the board was obligated to convert his sentence to a life sentence with the possibility of parole. The court's opinion in *Norris*, according to the state, did not indicate that Norris automatically was required to be released on parole as soon as the board made a finding of likely rehabilitation. Instead, the state argues, plaintiff and the Court of Appeals seized on this court's observation in *Norris* that Norris was entitled to have his first aggravated-murder sentence retroactively changed—to life with the possibility of parole—as of the date on which the board concluded that Norris was likely to be rehabilitated. This court deemed that date to have been the date on which Norris "began serving his second life sentence with a 20-year minimum term of confinement for his second conviction of aggravated murder." *Norris*, 331 Or at 208. That statement, the state asserts, is the source of the idea that *Norris* stands for the otherwise inexplicable proposition that any inmate convicted of aggravated murder is entitled to immediate release when the board has determined only that he is *likely* to be rehabilitated within a reasonable time. In the state's view, this court's decision to

---

[6] The state asks us to hold that, notwithstanding a board finding that an inmate is likely to be rehabilitated within a reasonable period of time, the board never can reduce the inmate's sentence below the 20-year minimum. Conversely, plaintiff asks us to hold that a board "rehabilitation finding shortens the twenty-year minimum term that initially applies to life sentences in such cases to fifteen years[.]" We do not find it necessary to reach that issue in this case because plaintiff already has served more than the 20-year minimum sentence.

hold that Norris's second sentence started on the date of the board's finding arose from the complexities inherent in untangling the effects of multiple convictions, not from any statutory command that the inmate was entitled to immediate release based on a finding that he was capable of rehabilitation.

Plaintiff argues that the Court of Appeals correctly understood the implications of *Norris*. He observes that, after reviewing the text and context of ORS 163.105 (1977), this court decided that the sole issue in a rehabilitation hearing before the board is whether the inmate is likely to be rehabilitated in a reasonable period of time. In *Norris*, the day that the board entered its likely-to-be-rehabilitated finding was deemed to be the day that the first sentence ended and the second sentence began. According to plaintiff, the Court of Appeals correctly viewed *Norris* as holding that an inmate "must automatically be released on parole in connection with the relevant sentence on the date on which the board finds that the offender is capable of rehabilitation and, concomitantly, converts the offender's sentence." *Roy*, 194 Or App at 339. Further, ORS 163.105 (1983) contains no provision changing its effect when two life sentences are imposed (as in *Norris*), rather than a single life sentence (as in this case). Plaintiff argues that, in effect, ORS 163.105 (1983) offers a lesser alternative sentence of 15 years, available to inmates who can demonstrate to the board's satisfaction that they are "likely to be rehabilitated within a reasonable period of time." *See* ORS 163.105(3) (1983) ("[A]t any time after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time."). After 15 years, plaintiff argues, if the board determines that the inmate is likely to be rehabilitated, then he must be released.[7]

We agree with the state that the Court of Appeals erred when it relied more heavily on a peculiar facet of the

---

[7] As noted previously, we *do not reach the issue of whether a board finding* under ORS 163.105 (1983) can, in effect, reduce an inmate's sentence below the otherwise applicable 20-year minimum. *See* 339 Or at 541 n 6.

procedural posture in *Norris* than on the plain directive of the applicable statute. Under ORS 163.105(4) (1983), if the board finds that the inmate is capable of rehabilitation, then the board must enter an order converting "the terms of the prisoner's confinement to life imprisonment with the possibility of parole, or work release." The issue for the board is "only whether the prisoner is capable of rehabilitation." *Norris*, 331 Or at 207. This court further observed in *Norris* that the sentence would be converted to one of life imprisonment with merely the *possibility* of parole or work release. *Id.* Nothing in the statute or the opinion in *Norris* supports the view that the "possibility" of release is the same as a requirement of "immediate" release.

The court in *Norris* did not determine Norris's *release date* or hold that he was eligible for parole. Instead, his release date would depend on a finding of likely rehabilitation with respect to his *second* sentence. *See Norris*, 331 Or at 208 (allowing petitioner to "petition for a second rehabilitation hearing after he serves 15 years of his second aggravated-murder sentence" but noting that he would not be "eligible for parole unless the [b]oard [found] him capable of rehabilitation at that second hearing"). More importantly, *Norris* did not purport to establish any rule that a finding of likely rehabilitation required immediate release.

We therefore conclude that the Court of Appeals erred in holding that plaintiff was entitled to immediate release on parole after the board found that he was "likely to be rehabilitated within a reasonable period of time." As noted previously, the Court of Appeals did not reach plaintiff's constitutional arguments. We therefore remand to the Court of Appeals so that it may consider those arguments.

The decision of the Court of Appeals is reversed, and the cases are remanded to the Court of Appeals for further proceedings.