Submitted June 6, 2008, reversed and remanded February 11, petition for review allowed June 17, 2009 (346 Or 361)

**RIDGE WAYNE FLEMING,**
*Petitioner,*

*v.*

**BOARD OF PAROLE
AND POST-PRISON SUPERVISION,**
*Respondent.*

Board of Parole and Post-Prison Supervision
A133967

202 P3d 209

Ridge Wayne Fleming filed the briefs *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner, who was convicted of aggravated murder in 1986, seeks review of an order of the Board of Parole and Post-Prison Supervision (board) in which the board (1) concluded that petitioner was likely to be rehabilitated within a reasonable period of time, (2) altered his term of confinement to life imprisonment with the possibility of parole, and (3) set a projected parole release date in 2016, at which point petitioner will have served the judicially imposed 30-year minimum sentence for aggravated murder imposed pursuant to ORS 163.105(1) (1985).[1] Petitioner argues that, under *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000), *cert den*, 534 US 1028 (2001), the board was required, after finding that he was likely to be rehabilitated within a reasonable period of time, to establish a parole release date under what petitioner deems "the ordinary statutes and rules which otherwise govern the determination of an inmate's release from prison." As explained below, we conclude that the effect of the board's determination that petitioner could be rehabilitated within a reasonable period of time was to override the judicially imposed 30-year minimum sentence. Accordingly, we reverse the board's order and remand for further proceedings.

The pertinent facts are not in dispute. Petitioner was convicted in 1986 of an aggravated murder committed in November 1985. He was convicted of numerous other offenses committed at the same time, but the sentences on those crimes were to run concurrently with the aggravated murder sentence and are not at issue in the present case. The judgment provided that, pursuant to ORS 163.105, petitioner was to serve a life sentence for aggravated murder, with a minimum sentence of "Thirty (30) Years, with no possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp." During approximately the first 10 years of his confinement, petitioner had numerous disciplinary problems in prison, mostly related to his ongoing use of controlled substances. Beginning in approximately 1997, petitioner began receiving

---

[1] All references to ORS 163.105 in this opinion are to the version of that statute in effect in 1985, unless otherwise noted.

various forms of treatment and successfully completed a number of programs; at the time of his murder review rehabilitation hearing at issue in the present case, petitioner had been a model prisoner for approximately 10 years.

On May 17, 2007, the board held a rehabilitation hearing pursuant to ORS 163.105. Its consequent order stated, in part:

"The Board finds inmate is likely of rehabilitation within a reasonable period of time; therefore, the Board changes the terms of confinement to life with the possibility of parole and sets a projected parole release date of 4/30/2016 following 360 months.

"A hearing will be scheduled in 10/2015 with a current psychological evaluation."

Petitioner sought administrative review, arguing that, after the board makes a finding that an inmate is likely to be rehabilitated, the inmate should then become eligible for parole release. He further argued that, after the board makes a finding of likely rehabilitation and changes the term to life with the possibility of parole, the board is required to set a prison term pursuant to its "matrix rules" that were in effect at the time of the crime.[2] On administrative review, the

---

[2] The court explained the matrix system in *Gordon v. Board of Parole*, 343 Or 618, 621-22, 175 P3d 461 (2007), as follows:

"In 1977, the legislature adopted a new sentencing scheme that replaced the old discretionary system with a new 'matrix' system. Or Laws 1977, ch 372. Under the matrix system, an inmate must be assigned an initial parole release date within a specified time of being sentenced. ORS 144.120(1). That initial release date is based on a matrix that ranks, on one axis, the seriousness of the crime, and on the other axis, the inmate's criminal history. *See* ORS 144.780 (directing board to adopt rules setting ranges of duration of imprisonment). Notwithstanding the directive in ORS 144.120(1) to the board to set an initial release date, the board may deny parole entirely if it determines that the inmate's offense was particularly violent or if the inmate has been diagnosed by a psychiatrist or psychologist as having a severe emotional disturbance such as to constitute a danger to the health or safety of the community. ORS 144.120(4). Once the board has set an inmate's initial release date under ORS 144.120, however, the board may postpone that date for only three reasons: if the inmate has engaged in serious misconduct while in prison, the board must postpone the release date, ORS 144.125(2); if the inmate has a severe psychiatric or psychological disturbance such as to constitute a danger to the health or safety of the community, the board may postpone the release date, ORS 144.125(3); and if the inmate's parole plan is inadequate, the board may defer the release date for not more than three months, ORS 144.125(4). In the absence of one of those grounds for postponement, the inmate has a legal right

board upheld its decision, concluding that (1) ORS 163.105 did not permit it to, in effect, override petitioner's 30-year statutory minimum sentence for aggravated murder, and (2) the matrix system did not provide for determining a matrix-based parole release date for inmates serving sentences for aggravated murder.

Petitioner seeks judicial review of the board's order. As explained below, we conclude that petitioner is correct that the board's finding that he was likely to be rehabilitated did, in effect, override the 30-year minimum sentence. However, we also conclude that the board is correct that its matrix system did not contain provisions governing parole consideration for aggravated murderers who had been deemed by the board likely to be rehabilitated. Given those conclusions, we must remand to the board for further proceedings.

At the time of petitioner's offense, ORS 163.105 provided:

> "(1)   When a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant shall be sentenced to death or life imprisonment pursuant to ORS 163.150. If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release or work release or any form of temporary leave or employment at a forest or work camp.

> "(2)   At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *

> "* * * * *

---

to release on the scheduled release date. ORS 144.245(1) (when board has set a parole release date, 'the prisoner shall be released on that date unless the prisoner on that date remains subject to an unexpired minimum term during which the prisoner is not eligible for parole, in which case the prisoner shall not be released until the expiration of the minimum term') * * *."

(Footnotes omitted.)

"(3)   If, upon hearing all of the evidence, the board, upon a unanimous vote of all five members, finds that the prisoner is capable of rehabilitation and the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise the board shall deny the relief sought in the petition.

"(4)   Not less than two years after the denial of the relief sought in a petition under this section, the prisoner may petition again for a change in the terms of confinement. Further petitions for a change may be filed at intervals of not less than two years thereafter."

As noted above, petitioner was sentenced pursuant to the second sentence of ORS 163.105(1): "If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release or work release or any form of temporary leave or employment at a forest or work camp."

Pursuant to ORS 163.105(2), petitioner sought a rehabilitation hearing, for the board "to determine if the prisoner is likely to be rehabilitated within a reasonable period of time." And pursuant to ORS 163.105(3), the board did, in fact, conclude that petitioner was likely to be rehabilitated within a reasonable period of time, and therefore it entered an order to "convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release."

In short, there is no dispute that the board accurately followed the statute to that point. The question presented here is whether, once the board "convert[s] the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release," an inmate becomes eligible for parole *before* 30 years have been served, as petitioner contends, or whether the conversion of the sentence simply means that the inmate will be eligible for parole *after* serving the 30-year statutory minimum term.

The resolution of that question is a matter of statutory construction, to which we apply the familiar methodology of *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993). Under the methodology of *PGE,* our polestar is legislative intent. In discerning that intent, we first examine the text and context, which includes other provisions of the same statutory scheme and other related statutes, and apply rules of statutory construction that bear directly on the interpretation of the statutory provision at issue. If, after examining the statute in context, we determine that its meaning is ambiguous, we examine the legislative history to attempt to resolve the ambiguity. Finally, if the statutory text remains ambiguous, then we resort to general canons of statutory construction. *Id.* "Ambiguity" means there are at least two reasonable interpretations of the statutory terms. *State v. Cooper,* 319 Or 162, 167, 874 P2d 822 (1994). A reasonable interpretation is one that is not "wholly implausible." *Owens v. MVD,* 319 Or 259, 268, 875 P2d 463 (1994).

The text of subsection (1), standing alone, is quite clear. Once a defendant has been convicted of aggravated murder but not sentenced to death, the court "shall order that the defendant be confined for a minimum of 30 years without possibility of parole." ORS 163.105(1). That is, the court is required to enter a judgment indicating that the defendant must be confined for a minimum of 30 years without parole.

Subsection (2) is equally clear: Any time after 20 years from the date the court ordered confinement for a minimum of 30 years without the possibility of parole pursuant to subsection (1), the prisoner can seek a rehabilitation hearing.

The difficulty arises when subsection (3) is read in the context of the previous two subsections: Under subsection (3), once the board has found that the prisoner is capable of rehabilitation and that "the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole," then the board is to "enter an order to that effect and the order *shall convert the terms of the prisoner's*

*confinement to life imprisonment with the possibility of parole*[.]" ORS 163.105(3) (emphasis added).

Petitioner contends that subsection (3) authorizes the board to "convert" the terms of confinement that he received from the court pursuant to subsection (1) into something *other than* life imprisonment with a minimum of 30 years without the possibility of parole. That is, petitioner maintains that when the board "converts" his terms of confinement pursuant to subsection (3), it converts (a) life imprisonment *with a minimum of 30 years without* the possibility of parole into (b) life imprisonment *with* the possibility of parole. Thus, in petitioner's view, the effect of the board's determination is to remove the "30 years without possibility of parole" provision from the terms of confinement.

The difficulty with petitioner's reading is that it renders the phrase in subsection (1) of "30 years without possibility of parole" gratuitous. That is, if petitioner is correct, then subsections (1) to (3) would operate in exactly the same way, regardless of whether that phrase was included in subsection (1), because, after *20* years, any inmate would, upon the board's determination that he or she was capable of rehabilitation, be eligible for parole. Conversely, under subsection (2), an inmate is not eligible until the board has made the requisite determination—and that is so regardless of whether the inmate has served 20 years, or 30 years, or 50 years. *Larsen v. Board of Parole*, 191 Or App 526, 84 P3d 176, *rev den*, 337 Or 248 (2004). Thus, under petitioner's construction, the "30 year" provision of subsection (1) would serve no purpose.[3]

That proposed construction would appear to conflict with two related "first-level" maxims of statutory construction. First, in construing a statute, we are not to construe it in such a way as to omit what has been inserted. ORS 174.010. Second, "where there are several provisions or particulars

---

[3] If petitioner is correct—and subsection (3) permits the board to parole him after 20 years based on a finding that he is likely to be rehabilitated within a reasonable period of time—then the phrase "30 years" as used in subsection (1) means, in effect, the same thing as the phrase "20 years" as used in subsection (2). That is, if petitioner is correct, there is no obvious reason why subsection (1) should not have said "minimum of 20 years without the possibility of parole" rather than "minimum of 30 years without the possibility of parole."

such construction is, if possible, to be adopted as will give effect to all." *PGE*, 317 Or at 611 (quoting ORS 174.010). Thus, although petitioner's reading of subsection (3), in isolation, is textually plausible, that plausibility is seriously undermined by the fact that his proposed interpretation would mean we would have to read subsections (1) and (2) in a manner that is somewhat at odds with basic, first-level maxims of statutory construction.

We therefore turn to the state's alternative interpretation of the text to determine whether its suggested interpretation is plausible while petitioner's is "wholly implausible." *Owens*, 319 Or at 268. The state contends:

> "[T]he inmate's sentence, prior to the board finding him capable of rehabilitation, would accurately be described as 'life imprisonment with a 30-year minimum, with the possibility of parole after 30 years *if* the inmate proves he is capable of rehabilitation within a reasonable period of time.' If the board then finds that, under Section (3), the inmate is capable of rehabilitation, he becomes eligible for release on parole only *after he has served his minimum 30-year term.*"

(Emphasis in original.)

The state's proposed reading of the statute is, initially, facially plausible. That construction would, effectively, insert into subsections (2) and (3) the qualification that, regardless of the board's rehabilitation determination under subsection (2), the prisoner must serve at least 30 years before being released—which could violate the "first-level" maxim that, in construing statutes, courts are "not to insert what has been omitted." ORS 174.010. Nevertheless, that qualification could plausibly be derived from contextual references to the "30 year" provision of subsection (1). That is, it is plausible given the *actual* wording of ORS 163.105(1), (2), and (3), that the legislature intended, under subsection (1), for the prisoner to serve "a minimum of 30 years" with no possibility of parole within that 30 years, and that subsection (2) merely provides for an inmate to begin seeking to establish his eventual eligibility for parole by demonstrating his likelihood of rehabilitation 10 years before he has any chance to actually be released on parole.

The difficulty with the state's argument is that it fails to take into account another aspect of the text of subsection (3)—specifically, the provision that, if after 20 years, the board makes the requisite rehabilitation determination, it "shall *convert* the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release." (Emphasis added.) If the state were correct that the effect of a finding under subsection (2) is simply that the prisoner would become eligible for parole after 30 years, then the board would have no need to "convert the terms of the prisoner's confinement," because the prisoner's sentence, pursuant to subsection (1), already reflected a "minimum of 30 years without the possibility of parole."

The practical effect of the state's proposed construction is to delete from subsection (3) the directive that the board "*convert* the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release." ORS 163.105(3) (emphasis added). Given that subsection (3) uses the word "convert," and it does not refer to the "converted" term of imprisonment as including "a minimum of 30 years," the state's suggested interpretation of the statute becomes notably less plausible: Indeed, it runs afoul of the same principles of statutory construction that bedevil petitioner's proposed interpretation.

Given those manifest textual difficulties in the parties' contending constructions, we turn to other sources of guidance in our interpretive inquiry. We turn, particularly, to appellate decisions addressing ORS 163.105. *See, e.g., Wal-Mart Stores, Inc. v. City of Central Point*, 341 Or 393, 397, 144 P3d 914 (2006) (prior case law interpreting statute considered in first step of *PGE* analysis). The issue presented in this case has surfaced on the periphery of a number of cases.[4] We canvass them in chronological order.

The first of those decisions, albeit addressing the 1987 version of the law, was *State v. Wille*, 317 Or 487, 503 n 12, 858 P2d 128 (1993). In *Wille*, the court noted in passing in a footnote that ORS 163.105(1) (1987) required imposition of

---

[4] Not all of the cases concern the 1985 version of ORS 163.105. The aspect of the statute at issue here, however, was present in numerous versions of the statute, so the case law on other versions of the statute is pertinent to our inquiry.

a sentence of life imprisonment with a minimum of 30 years without possibility of parole, and observed: "That sentence includes a possibility of parole after 20 years for prisoners who establish that they are likely to be rehabilitated within a reasonable period of time. ORS 163.105(2)."

In *Severy v. Board of Parole*, 318 Or 172, 179, 864 P2d 368 (1993), the Supreme Court made the following observations about the pertinent provisions of ORS 163.105:

"The Board's only authority to alter a 30-year minimum imposed pursuant to ORS 163.105(1) was that authority set out in ORS 163.105(3) to (6). That is, on a petition filed by the prisoner at any time after 20 years from the date of the imposition of the minimum, the Board must hold a hearing to determine whether the prisoner is likely to be rehabilitated within a reasonable time. ORS 163.105(2). Only if the Board finds that the prisoner is capable of rehabilitation may the Board change the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. ORS 163.105(4) [which was the same as ORS 163.105(3) (1985)]. Those provisions are a complete legislative policy. * * *

"In this case, petitioner will not even be eligible to petition for a rehabilitation hearing until July 2005. *Until then, under the law in effect in 1984, the Board has no authority to alter or override the 30-year minimums imposed on petitioner by the trial court pursuant to ORS 163.105(1).*[8]

"[8] *We express no opinion regarding the Board's authority to alter a minimum term of imprisonment imposed on an aggravated murder conviction once the Board has found the prisoner is capable of rehabilitation.* As noted, such a finding cannot be made in this case until at least July 2005; therefore, any opinion on that issue would be premature."

(Emphasis added.) Thus, in *Severy*'s footnote 8, the Supreme Court—without reference to its *dictum* in *Wille*—appeared to reserve the issue that we confront here.

In *Norris v. Board of Parole*, 152 Or App 57, 952 P2d 1037 (1998), *aff'd,* 331 Or 194, 13 P3d 104 (2000), *cert den,*

534 US 1028 (2001), we substantially addressed the operation of ORS 163.105. Although our decision in *Norris* was superseded by the Oregon Supreme Court's later analysis, we recount our own opinion at some length. We do so not only as background for this issue, but also to demonstrate that the board has, over time, taken inconsistent positions as to the interpretation of ORS 163.105.

In *Norris*, the petitioner had been convicted of two counts of aggravated murder under an earlier version of ORS 163.105, which was structured similarly to the iteration of the statute we address but provided for a life sentence with a statutory minimum term of 20 (instead of 30) years, with a rehabilitation hearing to occur after 15 (instead of 20) years. The sentences were to be served consecutively. 152 Or App at 59. In that case, the petitioner sought a determination of rehabilitation after he had been in prison for approximately 15 years. The board found that the petitioner was capable of rehabilitation, but rejected the petitioner's argument that the determination that he was capable of rehabilitation rendered him eligible for parole at that point. Instead, the board concluded that he would be eligible for parole after serving his two consecutive statutory minimum terms of 20 years— or a total of 40 years. *Id.* at 60.

Specifically, the board in *Norris* took the position that it had the authority, under ORS 163.105, to override the statutory minimums and use the matrix system to establish a projected parole release date, but that it also could choose not to do so, despite its finding that the petitioner was likely to be rehabilitated:

> " 'Some inmates with parolable life sentences serve the imposed minimum sentence; some serve a matrix set which may be more or less than the minimum sentences and some serve life. This inmate has achieved a possibility of parole, not a guarantee. Capable of rehabilitation does not mean he is rehabilitated, nor does it guarantee he ever will be rehabilitated. The finding is only that he appears to be capable of rehabilitation.' "

*Id.* at 66 (quoting board order). The board consequently determined that the petitioner's matrix range would be 240

to 336 months for the offenses, but declined to "unsum"[5] the established prison terms and, instead, indicated that it was "sustain[ing] the judicially imposed minimum of 20 years as to each count." *Id.* On judicial review, we agreed with the petitioner and rejected the board's position. *Id.*

The Oregon Supreme Court allowed review and ultimately agreed that the board's order should be reversed. Before the Supreme Court, the board contended that ORS 163.105 required a two-step analysis, by which (1) the board was required to make a determination of whether the petitioner was capable of rehabilitation, and then, (2) as a separate matter, the board was required to determine whether to change the terms of confinement to life with the possibility of parole. *Norris*, 331 Or at 202-03. The court noted that the board, in so positing its function, took the position that it "*may* override the minimum terms and set a release date according to the matrix," *id.* at 203 (emphasis in original), but that it was not required to do so.

The Supreme Court, examining the text of ORS 163.105 in context, rejected the board's structural premise that the statute called for separate inquiries into whether an inmate was likely to be rehabilitated and whether the terms of confinement should be changed. In that regard, the court noted, in particular, the language of ORS 163.105(3) that indicated that the "sole issue" at the rehabilitation hearing "shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time." *Norris*, 331 Or at

---

[5] As we explained in *Corgain v. Board of Parole*, 213 Or App 407, 420 n 5, 162 P3d 990 (2007):

"The board's practices of 'summing' or 'unsumming' prison terms are based on the principles set forth in ORS 144.785(2) (1981), that when consecutive sentences were imposed,

" 'the duration of the term of imprisonment shall be the sum of the terms set by the board * * * provided, however, that the duration of imprisonment may be less than the sum of the terms if the board finds * * * that consecutive sentences are not appropriate penalties for the criminal offenses involved and that the combined terms of imprisonment are not necessary to protect the community security.'

"In general, 'summing' refers to the practice of adding the consecutive terms together, and 'unsumming' refers to the board's determination that consecutive sentences are not appropriate, thus allowing those terms to run concurrently."

203 (quoting ORS 163.105(3) (1977)). The court concluded that a determination that the petitioner could be rehabilitated within a reasonable period of time meant that the board was required to change his terms of confinement to life with the possibility of parole. *Id.* at 207. The Supreme Court ultimately held:

> "Applying that analysis to this case, we conclude that the Board must change the first of petitioner's life sentences to life with the possibility of parole or work release. Petitioner is entitled to have that change occur retroactively to January 26, 1994, *the date that the Board found him to be capable of rehabilitation.* On that date, *petitioner began serving his second life sentence with a 20-year minimum term of confinement for his second conviction of aggravated murder.* In 2009, 15 years from the date that he began serving that 20-year minimum term, petitioner may petition for a rehabilitation hearing * * *."

*Id.* at 207-08 (emphasis added).

All of the cases discussed to this point—as well as the board's own position in the *Norris* case—support (or at least do not contradict) petitioner's position that, once the board holds a rehabilitation hearing and finds that he is likely to be rehabilitated within a reasonable period of time, the board could, in effect, override the statutory minimum term of 30 years' imprisonment. However, cases decided in the wake of *Norris*—in addition to the statutory and administrative rule context described below—cast significant doubt that *Norris* can be read as broadly endorsing the proposition that the board has such authority.

The first significant follow-on case to *Norris* was *Roy v. Palmateer*, 194 Or App 330, 95 P3d 1124 (2004), *rev'd*, 339 Or 533, 124 P3d 603 (2005). In *Roy*, the petitioner was convicted of aggravated murder under ORS 163.095(2) (1983), and received a life sentence with a possibility of parole after 20 years. 194 Or App at 332. After he had served approximately 15 years, the board held a rehabilitation hearing and determined that he was likely to be rehabilitated within a reasonable period of time. The board then determined that the petitioner would be eligible for parole after completing the service of his 20-year statutory minimum sentence. *Id.*

The petitioner sought habeas corpus relief,[6] asserting that, in light of *Norris*, he was entitled to immediate parole release as of the date that the board made the finding that he was capable of rehabilitation. *Id.* at 333.

We agreed with the petitioner:

"[I]n applying its legal conclusions to the case before it, the [Oregon Supreme Court in *Norris*] stated that, as of January 1994—the date that the board found the offender in that case to be capable of rehabilitation, and therefore also the date that the board was required to convert his sentence—the offender 'began serving' his consecutive sentence. The court also stated that the offender could petition for a hearing in connection with his consecutive sentence in 2009. Those statements appear necessarily to rest on an understanding by the court that, as a matter of law, an offender subject to ORS 163.105(3) and (4) must automatically be released on parole in connection with the relevant sentence on the date on which the board finds that the offender is capable of rehabilitation and, concomitantly, converts the offender's sentence. We can conceive of no other justification for the court's statements."

*Id.* at 339. In sum, we reasoned that, because the petitioner in *Norris* had been deemed by the Supreme Court to have started serving his consecutive sentence at the point the board found him eligible for rehabilitation, the prison term for the first sentence was deemed to have ended at that point. Hence, we concluded that the petitioner in *Roy*—who had no consecutive sentence to serve—was eligible for parole.

The Supreme Court disagreed and reversed. As an initial matter, the court noted—twice, in fact—that it specifically was *not* deciding the issue raised in the present case. That is, the Supreme Court expressly did not reach the question whether, "notwithstanding a board finding that an inmate is likely to be rehabilitated within a reasonable period of time, the board never can reduce the inmate's sentence below the 20-year minimum." *Roy*, 339 Or at 541 n 6. *See also id.* at 542 n 7 ("As noted previously, we do not reach the issue of whether a board finding under ORS 163.105

---

[6] At the time, orders of the Parole Board were not subject to direct judicial review and, accordingly, were subject to review by way of habeas corpus.

(1983) can, in effect, reduce an inmate's sentence below the otherwise applicable 20-year minimum.").

As to the specific issue raised in *Roy*—whether the board was required to parole the petitioner immediately upon a finding that he was likely to be rehabilitated—the Supreme Court held that the board was not so obligated:

> "We agree with the state that the Court of Appeals erred when it relied more heavily on a peculiar facet of the procedural posture in *Norris* than on the plain directive of the applicable statute. Under ORS 163.105(4) (1983), if the board finds that the inmate is capable of rehabilitation, then the board must enter an order converting 'the terms of the prisoner's confinement to life imprisonment with the possibility of parole, or work release.' The issue for the board is 'only whether the prisoner is capable of rehabilitation.' *Norris*, 331 Or at 207. This court further observed in *Norris* that the sentence would be converted to one of life imprisonment with merely the possibility of parole or work release. *Id.* Nothing in the statute or the opinion in *Norris* supports the view that the 'possibility' of release is the same as a requirement of 'immediate' release.

> "The court in *Norris* did not determine Norris's release date or hold that he was eligible for parole. Instead, his release date would depend on a finding of likely rehabilitation with respect to his second sentence. *See Norris,* 331 Or at 208 (allowing petitioner to 'petition for a second rehabilitation hearing after he serves 15 years of his second aggravated-murder sentence' but noting that he would not be 'eligible for parole unless the [b]oard [found] him capable of rehabilitation at that second hearing'). *More importantly,* Norris *did not purport to establish any rule that a finding of likely rehabilitation required immediate release.*"

*Roy*, 339 Or at 542-43 (brackets in original; emphasis added).

Obviously, *Roy* is not controlling here, given that it specifically reserved the issue now before us. We refer to *Roy* only for the negative proposition that the court clearly considered this to be an open question, and one not answered by *Norris* (or presumably by *Severy* or *Wille* for that matter).

After *Roy*, the Supreme Court decided *Engweiler v. Board of Parole*, 343 Or 536, 175 P3d 408 (2007). The issue in

*Engweiler*, a case involving a certified question from the federal district court in a habeas corpus action, was the petitioners' potential eligibility for parole. Each of the petitioners had committed the crime of aggravated murder when he was under the age of 17. Although the petitioners' crimes in *Engweiler* were committed much later than petitioner's crimes here when the sentencing provisions differed significantly, the Supreme Court, in answering the district court's questions, provided a background description of the aggravated murder sentencing scheme and associated administrative rules throughout the 1980s. The court's explanation provides insight into its current understanding of the intended operation of the statutory scheme at issue in this case:

> "Before 1985, the maximum penalty for aggravated murder was life imprisonment, with a mandatory minimum sentence of either 20 or 30 years, depending on the particular form of aggravated murder committed. Pursuant to ORS 144.110(2)(b) (1983), the Board of Parole (the board) was prohibited from releasing on parole any person convicted of aggravated murder, except as provided in the statute providing those minimum terms. * * *

> "Oregon voters reinstated the death penalty for aggravated murder through a constitutional amendment and other enactments that became effective on December 6, 1984. As amended, ORS 163.105 (1985) made the potential punishment for aggravated murder death, if the jury made the requisite statutory findings, or life imprisonment with a minimum term of 30 years without the possibility of parole. Or Laws 1985, ch 3, § 1. * * *

> "Shortly after those changes took effect, the board modified its rules for setting parole release dates for persons convicted of aggravated murder. In particular, the board deleted parole hearing procedures for persons convicted of aggravated murder from division 30 of OAR chapter 255, which was (and remains) the set of rules that governed parole release procedures for felony offenders generally. *See former* OAR 255-30-012 (deleted May 31, 1985). Simultaneously, *the board created a new set of rules—division 32—that specifically addressed parole procedures for persons convicted of aggravated murder. Those rules—both procedurally and substantively—tracked the mandatory minimum sentence required by ORS 163.105(1) (1985).* Under OAR 255-32-005 (1985), the rules required that an

aggravated murderer receive a 'prison term hearing' under the procedures provided in division 30 of the rules. OAR 255-32-010(1) (1985) identified the 'minimum period of confinement for a person convicted of Aggravated Murder as defined by ORS 163.105(1) [(1985)]' to be 30 years. *Thus, for persons convicted of aggravated murder, the rules did not provide for a proceeding in which a parole date would be determined until after the inmate had served the minimum term of confinement imposed pursuant to ORS 163.105(1) (1985).* In effect, the rules did not anticipate the need to do so for any person convicted of aggravated murder."

*Id.* at 538-40 (footnotes omitted; brackets in original; emphasis added).

With *Engweiler*, our review of potentially pertinent case law ends. That review shows that not only have the appellate courts taken differing views of the meaning of ORS 163.105 at different times, but the board itself has taken differing views as to whether or not that statute gives it authority to parole an inmate who has been found capable of rehabilitation, but has not yet served the "minimum of 30 years without the possibility of parole." ORS 163.105(1). Specifically, both the Oregon Supreme Court and the board have *assumed* at certain points that, after the board has determined that an inmate serving a sentence for aggravated murder has been found "likely to be rehabilitated within a reasonable period of time," ORS 163.105(2), the board would have authority to parole that inmate, regardless of the fact that the inmate had not finished serving the statutory minimum sentence "without possibility of parole" that is described in ORS 163.105(1). *See Norris*, 331 Or at 203 (board asserted that it had authority to override minimum term under ORS 163.105); *Wille*, 317 Or at 503 n 12 (court noted in *dictum* that ORS 163.105 included a possibility of parole after 20 years when a defendant had received a life sentence with a 30-year minimum). However, the Supreme Court has also explicitly reserved the question of whether such parole is possible. *See Roy*, 339 Or at 341 n 6, 342 n 7; *Severy*, 318 Or at 179 n 8. Finally, most recently, the court in *Engweiler* described the rules in effect in 1985, when petitioner committed his crime, as *not* providing for "a proceeding in which a parole date would be determined until after the inmate had

served the minimum term of confinement imposed pursuant to ORS 163.105(1) (1985)." *Engweiler*, 343 Or at 540.

Given that backdrop of contextual case law and the textual deficiencies of both petitioner's and the state's constructions of ORS 163.105, *see* 225 Or App at 585-88, we conclude that both parties have presented somewhat plausible, but problematic, interpretations of the statute. We note, moreover, that this question of statutory construction has only two possible answers—either the board has authority to parole aggravated murderers after 20 years, or it does not. Thus, this is not a situation in which a different, *more* plausible, interpretation is available that would allow us to dismiss *both* parties' interpretations as "wholly implausible." *Owens*, 319 Or at 268. Consequently, we turn to the pertinent legislative history of ORS 163.105. *PGE*, 317 Or at 611.

That legislative history is properly understood, and appreciated, only in light of the historical evolution of statutes pertaining to murder and punishments for murder in Oregon. Before the 1970s, Oregon's criminal statutes (like those in many other states) defined various degrees of murder, but included no provision pertaining to aggravated murder. *See, e.g., former* ORS 163.010, *repealed by* Or Laws 1971, ch 743, § 432 (murder in the first degree). In its comprehensive revision of the criminal code in the early 1970s, the legislature abolished the distinction between degrees of murder (although it retained distinctions for manslaughter and criminally negligent homicide) and established a life sentence for the crime of murder. At the same time, the legislature repealed statutes that required those convicted of first-degree murder to serve a minimum of 10 years' imprisonment before being considered for parole, and those convicted of second-degree murder to serve a minimum of seven years' imprisonment before being considered for parole. Or Laws 1971, ch 743, §§ 88, 432. Instead, under the new scheme, "parole eligibility of a person convicted under [ORS 163.115 of murder] would be determined by the State Board of Parole and Probation in the same manner as for any other convicted offender." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 88 (July 1971).

In short, following the enactment of the 1971 amendments and until 1977, the crime of murder carried an indeterminate life sentence, but a person convicted of that crime was not required to serve any minimum sentence before being considered for parole. In 1977, the legislature enacted ORS 163.095, defining aggravated murder, and ORS 163.105, establishing minimum sentences for aggravated murder. The portions of ORS 163.105 pertinent to our inquiry, as enacted in 1977, provided for life imprisonment "for a minimum of 30 years without possibility of parole" for certain aggravated murders and "for a minimum of 20 years without possibility of parole" for others. ORS 163.105(1), (2) (1977).[7] Further, subsections (3) and (4) of ORS 163.105 (1977) provided, in part:

> "(3)   At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, or at any time after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable time. * * *

> "* * * * *

> "(4)   If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of his confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect."

Those provisions were added to in 1981. We therefore look to the legislative history of the 1977 enactment and its 1981 addition. The 1977 legislative history shows that the impetus for the new provisions was a concern that the parole board had the ability to release murderers from custody at any time, coupled with a concomitant legislative desire to create a minimum sentence for certain types of murders. *See, e.g.*, Tape Recording, House Committee on Judiciary, HB 2011, Jan 18, 1977, Tape 1, Side 2 (statement of legal counsel Dennis Bromka). The 1977 legislature was discussing language that was not identical to the wording of the version of

---

[7] The law at that point contained no death penalty.

the statute that we address. Nevertheless, several legislators made statements indicating their belief that the 1977 version of ORS 163.105 provided for possible release of the more "heinous" aggravated murders after only 20 years. *See* Tape Recording, Senate Judiciary Committee, HB 2011, June 1, 1977, Tape 42, Side 1 (statements of Sen Stephen Kafoury, Sen Vern Cook). The legislative history also strongly suggests that a number of senators understood the bill to provide for the board to "overrule" the 30-year or 20-year judicially imposed minimum sentences. *See* Tape Recording, Senate Judiciary Committee, HB 2011, June 2, 1977, Tape 38, Side 2 (statements of Sen Elizabeth Browne, Sen Robert Smith, Sen Wallace Carson).

As noted, in 1981, the legislature added to the provision at issue here. The 1981 bill, Senate Bill 526, made numerous minor adjustments to statutes pertaining to aggravated murder. As pertinent here, the legislature made the following change to ORS 163.105(4):

> "If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of [*his*] **the prisoner's** confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect, **and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release.** Otherwise, the board shall deny the relief sought in the petition."

(Deletions in italics and brackets; additions in boldface.)

At a conference committee hearing on the bill on August 1, 1981, in which the committee was reviewing the final changes in the bill, Senator Jan Wyers explained that, under the proposed revisions, the prisoner would not "get to the parole board before the 15 or 20 years had been served," and that "*at the end of the 15 or 20 years then they could set a date.*" Tape Recording, Senate Committee on Justice, Conference Committee on SB 526, Aug 1, 1981, Tape 329A (statement of Sen Jan Wyers) (emphasis added). Representative Dick Springer added that, after the board reached a decision that a prisoner was likely to be rehabilitated, "then it would be treated as a regular homicide, not aggravated, in which

the matrix would apply. And we felt reasonably confident that the matrix guidelines were sufficient if the person had already served the minimum, which in any event, would be 15 years, then the matrix would provide additional guidelines to the parole board." Tape Recording, Senate Committee on Justice, Conference Committee on SB 526, Aug 1, 1981, Tape 329A (statement of Rep Dick Springer).[8]

Although isolated statements made by legislators in committee are not necessarily indicative of the intent of the entire legislature in enacting legislation, we conclude that the legislative history here is persuasive evidence of legislative intent. First, the quoted statements by legislators are directly on point as to the question before us. Second, the statements were not disputed or contradicted by any other statements. Finally, the statements support one of the "not wholly implausible" interpretations of the statute that we have described above. In sum, we conclude that the legislative history supports petitioner's contention that the legislature intended, in cases such as his, for the board to be able to override the 30-year sentence upon a finding that petitioner was likely to be rehabilitated within a reasonable time. Accordingly, we conclude that the board erred in construing ORS 163.105(3) otherwise.

■     That leads us to petitioner's second assignment of error. In that assignment, petitioner asserts that the board, after making its determination under ORS 163.105 that he was likely to be rehabilitated within a reasonable period of time, was required to establish his prison term by setting a matrix range. In its order, the board rejected that contention, noting that no administrative rules required it to take such an action.

Both parties are, to some extent, correct. On one hand, the legislative history indicates that the legislature, when it amended ORS 163.105 in 1981, contemplated that, if the board made a finding of likely rehabilitation and overrode

---

[8] We note in passing that, although it is not a part of the official legislative history of the bill, the staff summary of the bill that was before the legislators indicated that it "[p]ermits Parole Board, after 20 years, to convert 30-year minimum to 20 years * * * and [p]ermits Parole Board to convert 20-year [minimum] to 15 years[.]" Staff Measure Summary, SB 526 (1981).

the statutory minimum sentence of 20 or 30 years, the prisoner would then be considered for parole under the matrix system. *See, e.g.*, 225 Or App at 598-99 (quoting remarks of Rep Dick Springer). On the other hand, as the Supreme Court recently noted in *Engweiler*, in 1985 (that is, before the time petitioner committed the offense at issue here), the board had enacted rules that

> "did not provide for a proceeding in which a parole date would be determined until after the inmate had served the minimum term of confinement imposed pursuant to ORS 163.105(1) (1985). In effect, the rules did not anticipate the need to do so for any person convicted of aggravated murder."

*Engweiler*, 343 Or at 540. In short, petitioner is correct that, under the version of ORS 163.105 in effect when he committed his crimes, the board's finding that he was likely to be rehabilitated within a reasonable time had the effect of overriding his 30-year minimum sentence, but the board is correct that (at least as of 1985), its administrative rules have not provided a mechanism for doing so.

We faced a somewhat similar conundrum in *Corgain v. Board of Parole*, 213 Or App 407, 162 P3d 990 (2007). That case, like *Norris*, concerned an inmate who had a sentence to be served consecutively to his sentence for aggravated murder. In *Corgain*, the issue concerned when, relative to the board's determination pursuant to ORS 163.105(2) that the petitioner was likely to be rehabilitated, the petitioner's consecutive sentence would be deemed to have begun to run. The petitioner in *Corgain* asserted that the board was required to use the matrix to make that determination; we rejected that assertion in light of the fact that no existing statute or rule was directly applicable to the situation. We agreed, instead, with the board, that, under that circumstance, the more generic provisions of ORS 144.125 (which allows the board to defer parole based on misconduct or on a finding that the prisoner has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community) would govern the question. 213 Or App at 421-22.

The same answer, although it is somewhat unsatisfying, may be the only possible answer here—that is, that the

board, in considering petitioner for parole, should resort simply to ORS 144.125. However, under the novel circumstances of this case, and in light of the case law described above, which indicates that the board has taken differing views of its own rules throughout the years, we believe that, as a prudential matter, the best course at present is to remand this case to the board. On remand, the board should reevaluate which, if any, of its authorizing statutes properly apply to petitioner's circumstance, in light of our interpretation of ORS 163.105 (1985).

Reversed and remanded.